BRISBOY v FIBREBOARD PAPER PRODUCTS CORPORATION

Docket No. 68087. Submitted March 22, 1984, at Detroit.—Decided
    October 24, 1985.

Charlotte Rand, personal representative of the estate of Charles
    Rand, brought an action in the Wayne Circuit Court against
    Fibreboard Paper Products Corporation (defendant) and others for
    wrongful death, alleging that plaintiff's decedent died as a result
    of lung cancer caused by asbestosis contracted during his career
    as an asbestos insulation worker working for the defendants. Prior
    to a verdict, Daniel L. Brisboy, successor personal representative,
    settled with all defendants but Fibreboard. The jury returned a
    verdict for plaintiff and, pursuant to special instructions, found
    that plaintiff's decedent had been negligent for smoking for 30
    years and that the negligence was 55% of the cause of his death.
    The trial court, John D. O'Hair, J., refused to apply the doctrine
    of comparative negligence and entered a judgment for plaintiff.
    Defendant appealed, alleging error in the trial court's denial of
    a motion for a directed verdict and in its refusal to apply the
    doctrine of comparative negligence. Plaintiff cross-appealed, alleg-
    ing error in the trial court's exclusion of evidence relating to
    workers' compensation claims for asbestosis brought against
    defendant in the late 1950's and early 1960's. *Held:*

    1. An actor will be held liable for his negligent conduct
    where that conduct was a legal or proximate cause of the harm
    to the plaintiff. There may be more than one proximate cause
    of an injury, and thus the mere fact that some other cause
    concurs, contributes or cooperates to produce an injury does not
    relieve any of the parties whose negligent conduct was one of
    the causes of the plaintiff's harm. An actor's negligent conduct
    is a legal or proximate cause of the harm to another where
    that conduct was a substantial factor in bringing about the
    harm. One of the considerations in determining whether an

REFERENCES

Am Jur 2d, Negligence §§ 176 *et seq.*

Sufficiency of proof that cancer resulted from accident or incident
    in suit rather than from pre-existing condition. 2 ALR3d 384.

Sufficiency of proof that cardiovascular or respiratory condition
    resulted from accident or incident in suit rather than from pre-
    existing condition. 2 ALR3d 401.

actor's conduct was a substantial factor in bringing about the harm to another is the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it. Plaintiff's proofs were sufficient to withstand a motion for a directed verdict.

2. The trial court properly refused to apply the doctrine of comparative negligence. There was no indication in the record that plaintiff's decedent was aware or should have been aware of the risk of cigarette smoking as it relates to asbestos and asbestos-related lung cancer.

3. Plaintiff's issue on cross-appeal is moot.

Affirmed.

1. NEGLIGENCE — PROXIMATE CAUSE.

An actor will be held liable for his negligent conduct where that conduct was a legal or proximate cause of the harm to the plaintiff; there may be more than one proximate cause of an injury, and thus the mere fact that some other cause concurs, contributes or cooperates to produce an injury does not relieve any of the parties whose negligent conduct was one of the causes of the plaintiff's harm.

2. NEGLIGENCE — PROXIMATE CAUSE.

An actor's negligent conduct is a legal or proximate cause of the harm to another where that conduct was a substantial factor in bringing about the harm; one of the considerations in determining whether an actor's conduct was a substantial factor in bringing about the harm to another is the number of other factors which contribute in producing the harm and the extent of effect which they have in producing it.

*Arthur L. Petersen, P.C.* (by *Arthur L. Petersen*), and *Baskin & Sears, P.C.* (by *Robert L. Jennings*), for plaintiff.

*Joselyn, Rowe, Jamieson, Grinnan, Callahan & Hayes, P.C.* (by *James J. Hayes, Jr.*), and *Gromek, Bendure & Thomas* (by *Carl L. Gromek* and *Nancy L. Bosh*), for defendant.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and S. J. LATREILLE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. Defendant appeals as of right from a jury verdict finding the defendant's negligence in failing to warn the plaintiff's decedent of the danger of working with asbestos products to be the proximate cause of his death. The plaintiff cross-appeals from the trial court's exclusion of evidence relating to workers' compensation claims for asbestosis brought against the defendant in California.

Charlotte Rand filed a complaint on October 31, 1979, seeking damages for the wrongful death of her husband, Charles Rand. Plaintiff alleged that her decedent died as a result of lung cancer caused by asbestosis contracted during his 26-year career as an asbestos insulation worker. Plaintiff named as defendants the nine employers her decedent had worked for from 1951 until 1977, but three of those defendants, Owens-Corning Fiberglass Corporation, Owens-Illinois Corporation, and Nicolet Inc., settled with the plaintiff prior to trial. During the course of the trial, plaintiff settled with Johns-Manville Corporation, Forty-Eight Insulators, Inc., Mechanical Insulation Services, Inc., Unarco, and Raybestos-Manhattan, leaving Fibreboard Paper Products Corporation as the sole defendant.

The testimony of a coworker of the decedent, Laurence Jean, revealed that the decedent worked for the defendant for at least six months and at most nine months as an asbestos insulator, *i.e.,* applying insulation material containing asbestos to various pipes. Mr. Jean testified that the air was "very, very dusty" while performing the work, and that there was no way to avoid breathing this dust.

The evidence presented at trial also revealed that plaintiff's decedent was a heavy cigarette user, having smoked two packs per day for 30 years. The effect of the cigarette use on the plaintiff's condition was disputed by the medical experts

presented by the parties. Dr. Joseph Wagoner, appearing on behalf of the plaintiff, discounted the effect of Mr. Rand's cigarette smoking on the grounds that Mr. Rand died of adenocarcinoma, and that cigarette smoking is more related to the squamous-type cell, not the adeno type. Dr. Wagoner concluded that cigarette smoking does not increase an asbestos worker's risk of developing lung cancer.

Dr. Leighton Kong, who performed the autopsy on the decedent, admitted that cigarette smoking can be related to adenocarcinoma of the lung, and in fact could have been the sole cause of Mr. Rand's lung cancer. However, Dr. Kong believed that there is a stronger link between asbestosis and cancer than cigarette smoking and cancer.

Dr. Gerrit Scheppes also testified on plaintiff's behalf. Dr. Scheppes indicated that, in his opinion, Mr. Rand's lung cancer was caused by asbestosis. However, Dr. Scheppes admitted that Mr. Rand's history of cigarette smoking played a minor contributing role in the development of his lung cancer.

The defendant's medical evidence included the testimony of Dr. Harry Demopoulos. Dr. Demopoulos opined that Mr. Rand did not suffer from asbestosis and that Mr. Rand's adenocarcinoma was due solely to cigarette smoking. Dr. William Weiss testified that Mr. Rand had no evidence of pulmonary asbestosis and, in light of this fact, Mr. Rand's development of lung cancer was attributable to his history of cigarette smoking. Dr. Weiss also testified that, while asbestosis and cigarette smoking can combine to create a synergistic effect and thus a greater risk of developing lung cancer than the additive risk of the two factors alone, this increased risk does not exist without the presence of asbestosis.

During the course of the trial, the plaintiff proposed to offer exhibits 61-64, which detailed various workers' compensation claims made against the defendant in the late 1950's and early 1960's. The purpose of the exhibits was to show that the defendant had actual knowledge or notice that exposure to asbestos dust constituted a risk to the health of the asbestos insulators through the contraction of asbestosis or lung cancer. The trial court denied the admission of these exhibits on the ground that their probative value was significantly outweighed by their prejudicial effect. The trial judge believed that the issue was whether the state of the art at that time was developed to the point that knowledge of the deleterious effect of asbestos dust was available. Evidence of workers' compensation claims against the defendant would confuse the issues and, in effect, tend to establish that the defendant had actual knowledge of the effect of asbestos dust inhalation without regard to whether the state of the art permitted such knowledge.

When the case was submitted to the jury for its verdict, it was instructed by the trial judge on the issue of contributory negligence by Mr. Rand. On this point, the jury found Mr. Rand's history of smoking cigarettes for 30 years to have been evidence of negligence. In comparison with that of the defendant, Mr. Rand's negligence was found to be 55 percent of the cause of his death. However, pursuant to a ruling made before the case was submitted to the jury, the trial court refused to apply the doctrine of comparative negligence, and held the defendant responsible for 100% of the injury which resulted in Mr. Rand's death. The trial judge based this action upon his conclusion that, as a matter of law, there was no evidence in the record which would permit a reasonable mind

to conclude that plaintiff's decedent knew or should have known that, as a cigarette smoker, his exposure to asbestos dust could create an increased risk of contracting cancer of the lung.

On appeal, defendant first argues that there was insufficient evidence to establish that Mr. Rand's six- to nine-month exposure to defendant's asbestos products was a proximate cause of his death. Defendant argues that the trial court therefore improperly denied defendant's motion for a directed verdict. Before reaching the merits of this issue, we note that the trial court did apply the wrong standard when ruling on defendant's motion for directed verdict by relying on *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). That case specifically dealt with a motion for summary judgment rather than with a motion for directed verdict. However, if the motion would have been denied had the correct standard of review been applied, the error is harmless.

Under Michigan law, an actor will not be held liable for his negligent conduct unless that conduct was a legal or proximate cause of the harm to the plaintiff. There may be more than one proximate cause of an injury, and thus the mere fact that some other cause concurs, contributes, or cooperates to produce an injury does not relieve any of the parties whose negligent conduct was one of the causes of the plaintiff's harm. *Brackins v Olympia, Inc,* 316 Mich 275; 25 NW2d 197 (1946). An actor's negligent conduct will not be a legal or proximate cause of the harm to another unless that conduct was a substantial factor in bringing about the harm. *McLean v Rogers,* 100 Mich App 734, 737; 300 NW2d 389 (1980). One of the considerations in determining whether an actor's conduct was a substantial factor in bringing about the harm to another is "the number of other factors which

contribute in producing the harm and the extent of the effect which they have in producing it". 2 Restatement Torts, 2d, § 433(a), p 432. Where a number of events each contribute to the ultimate harm, one may have such a predominant effect as to make the effect of a particular actor's negligence insignificant. On the other hand, where none of the contributing factors has a predominant effect, their combined effect may act to dilute the effect of the actor's negligence and prevent it from becoming a substantial factor in bringing about the harm. 2 Restatement Torts, 2d, § 433, Comment d, p 433.

The plaintiff's proofs, viewed in the light most favorable to him, revealed the following. Mr. Rand's autopsy indicated that he died from cancer resulting from asbestosis and that there was a massive amount of asbestos in his lungs. The nature of the disease from which Mr. Rand suffered is that it progresses cumulatively, with each group of asbestos fibers which lodges in the lung doing damage to the area in which it is present. The exposure to asbestos need not be extensive, and, in fact, even one month of exposure may cause asbestosis and ultimately result in the victim's death. Consequently, there is no safe level of exposure to any carcinogen.

This evidence was sufficient to permit reasonable minds to conclude that Mr. Rand died, at least in part, due to the development of asbestosis in his lungs as a result of his inhalation of asbestos fibers during his working career. While plaintiff naturally could not directly prove that defendant's asbestos fibers caused the disease which led to his death (it is impossible to determine which particular fibers from the group of fibers to which Mr. Rand was exposed in his career caused the dis-

ease), plaintiff did establish that, during the time Mr. Rand worked with defendant's product, the air was extremely dusty and that, when asbestos dust is visible, it necessarily implies an extreme exposure. Plaintiff also established that each fiber which lodges in the lung causes asbestosis in the area around that fiber. Thus, reasonable minds could conclude that Mr. Rand inhaled asbestos fibers from defendant's product and developed asbestosis. The only remaining issue, therefore, is whether the harm caused by defendant's negligent conduct was a substantial factor in bringing about the disease which led to Mr. Rand's death. While clearly a close question, we find that there was sufficient evidence in plaintiff's favor to withstand a motion for a directed verdict. Evidence was presented which showed that Mr. Rand was heavily exposed to defendant's product for six to nine months, that asbestos products were phased out in the early 1970's, and that Mr. Rand was exposed to asbestos products only 50 percent of the time at work during the years from 1954-1962. This conclusion is supported by two federal court opinions dealing with the complex problem of proof in asbestosis cases: *Borel v Fibreboard Paper Products Corp*, 493 F2d 1076 (CA 5, 1973), *cert den* 419 US 869; 95 S Ct 127; 42 L Ed 2d 107 (1974); *Migues v Fibreboard Corp*, 662 F2d 1182 (CA 5, 1981). We therefore find that the trial court properly denied defendant's motion for a directed verdict.

Defendant next argues that the trial court erred by refusing to diminish plaintiff's recovery under the doctrine of comparative negligence. The trial court ruled that Mr. Rand could not have been considered to be comparatively negligent with regard to the risk of asbestos-related cancer based only on evidence that he was aware of the risks of cancer related to cigarette smoking:

"There's no evidence in this record from which a reasonable mind could conclude that Mr. Rand had knowledge or should've had knowledge that as a cigarette smoker his exposure to asbestos containing insulation would cause a cancerous condition that was asbestos related in origin, though his smoking could've been a cause or a contributing factor to his ultimate cause of death. His conduct was such that under those circumstances he could not [be] deemed, as a matter of law, to be guilty of any negligence for one of knowledge as to the risks involved."

Both parties have raised excellent arguments in addressing this issue. Plaintiff notes that the jury found that Mr. Rand's death was due to asbestos-related lung cancer, a result of the synergistic effect which occurs when asbestos fibers are inhaled by a cigarette smoker, rather than from purely cigarette-related lung cancer. Thus, plaintiff argues that the question is not whether or not Mr. Rand knew or should have known that cigarette smoking can cause lung cancer, but rather whether or not Mr. Rand knew or should have known that by smoking cigarettes he was exposing himself to the increased risk of lung cancer caused by this synergistic effect. Since, as noted by the trial court, there was no evidence that Mr. Rand was either aware or should have been aware of *this* risk (although there was such evidence in regard to his knowledge of the risk of purely cigarette-related lung cancer), Mr. Rand could not have been found contributorily negligent as a matter of law. Defendant counters by arguing that such a result places the entire burden of Mr. Rand's negligence in smoking cigarettes on defendant. The evidence showed that Mr. Rand either knew or should have known that cigarette smoking increases the risk of developing lung cancer. The fact that an additional factor combined with the decedent's negligence to bring about his death by lung cancer should not entirely exculpate Mr.

Rand, but should reduce his recovery proportionately.

While we again find the issue to be a close one, we believe that the trial court properly refused to find Mr. Rand to have been contributorily negligent. Although Mr. Rand would have been contributorily negligent with regard to lung cancer caused solely by his cigarette smoking, there was no indication on the record that he was aware or should have been aware of the risk of cigarette smoking as it related to asbestos and asbestos-related lung cancer. Thus, decedent cannot be said to have been negligent with regard to the specific hazard which he actually encountered. See 2 Restatement Torts, 2d, § 468, p 516, and cases cited therein. The fact that the risk negligently undertaken by the decedent was very similar to that actually encountered does not alter this analysis. See *James v Pennsylvania R Co,* 101 F Supp 241 (WD Pa, 1951), *aff'd* 196 F2d 1021 (CA 3, 1952), wherein the court found that the trial court had properly refused to instruct the jury that it had been negligent for the plaintiff to have engaged in sandblasting after receiving medical advice not to do so because the medical advice had been based upon a diagnosis of sinusitis, rather than on the disease for which the plaintiff sought recovery—silicosis. In this case, Mr. Rand could be found to have negligently assumed the risk of contracting cigarette-related lung cancer but not to have assumed the risk of developing unknown and unforeseen diseases which might have been related to his smoking. We, therefore, find that the trial court properly declined to apply comparative negligence to reduce plaintiff's damages.

We need not address plaintiff's issue on cross-appeal because we have affirmed the decision of the trial court.

Affirmed.