## BRISBOY v FIBREBOARD CORPORATION

Docket No. 78048. Argued May 4, 1987 (Calendar No. 1). Decided
    January 25, 1988.

Daniel L. Brisboy, successor personal representative of the estate
of Charles R. Rand, deceased, brought a wrongful death action
in the Wayne Circuit Court against Fibreboard Corporation,
alleging that the decedent's death was the result of cancer
caused by exposure to an asbestos product manufactured by the
defendant. The jury returned a special verdict, finding that the
defendant's negligence was a proximate cause of the decedent's
death and that the decedent's heavy and sustained use of
cigarettes also was a proximate cause of his death amounting
to fifty-five percent of the combined negligence of the parties.
The court, John D. O'Hair, J., denied the defendant's motion
for a directed verdict and entered judgment against the defen-
dant, disregarding the finding of comparative negligence on the
ground that there was no evidence on the record that the
decedent knew or should have known that his smoking height-
ened the risk of developing lung cancer when exposed to
asbestos. The Court of Appeals, D. E. HOLBROOK, JR., P.J., and
R. M. MAHER and LATREILLE, JJ., affirmed in an opinion per
curiam (Docket No. 68087). The defendant appeals.

In an opinion by Justice CAVANAGH, joined by Chief Justice
RILEY and Justices LEVIN, BRICKLEY, BOYLE, and GRIFFIN, the
Supreme Court held:

The development of lung cancer is within the scope of the
risk assumed by a smoker, regardless of whether the risk is
enhanced by other factors. So long as there are findings of
negligence on the parts of the decedent smoker and another
party which proximately caused the decedent's death, the
relative fault of each of the parties must be assessed. Where it
is established that a party's negligence was a proximate, al-
though not the sole, cause of an injury, the party's motion for a
directed verdict is properly denied.

1. Liability for an injury does not attach unless a person's

REFERENCES

Am Jur 2d, Products Liability §§ 9, 932.
Liability of manufacturer or seller of tobacco product for injury
    caused thereby. 80 ALR2d 681.

negligent conduct is a proximate or legal cause of the injury. However, there may be more than one proximate cause of an injury, and a defendant may not escape liability for negligence merely because the negligence of others contributed to the injury. Where one of a number of negligent acts was a substantial factor in producing an injury, it will be considered a proximate cause. It is not necessary for a plaintiff to establish that a defendant's negligence was the sole cause of an injury.

2. A directed verdict is appropriate only where no factual question exists upon which reasonable minds might differ. Where a defendant's negligence is shown to have been a proximate cause of an injury, the defendant's motion for a directed verdict is properly denied. In this case, the jury reasonably could have concluded that the defendant's negligence was a substantial factor in bringing about the decedent's lung cancer. Thus, a directed verdict in the defendant's favor would have been inappropriate.

3. The proximate cause of the decedent's lung cancer was a question of fact for the jury. Consistent with the principles of comparative negligence, a defendant should be held liable only for damages causally related to its negligence. The development of lung cancer is within the scope of the risk assumed by a smoker, regardless of whether the risk is enhanced by other factors. So long as there are findings of proximate cause with regard to the negligence of multiple parties, the negligence must be compared. In this case there was evidence to support the jury's apportionment of fault. The narrow definition of the foreseeable risk of harm to the decedent employed by the trial court and the Court of Appeals would result in an expansion of the defendant's liability beyond its relative fault, contrary to the principles of comparative negligence.

Affirmed in part, reversed in part, and remanded.

Justice ARCHER, concurring in part and dissenting in part, agreed that the rejection of the defendant's motion for a directed verdict was correct, but disagreed with the majority's analysis of and pronouncements regarding the risk of harm to the decedent, and thus concurred only in the result.

148 Mich App 298; 384 NW2d 39 (1985) affirmed in part and reversed in part.

1. NEGLIGENCE — COMPARATIVE NEGLIGENCE — PROXIMATE CAUSE — LUNG CANCER — SMOKING.

The development of lung cancer is within the scope of the risk assumed by a smoker, regardless of whether the risk is enhanced by other factors; in an action for wrongful death result-

ing from lung cancer, the proximate cause of the injury is a question of fact for the jury; so long as there are findings of negligence on the parts of the decedent smoker and another party which proximately caused the decedent's death, the relative fault of each of the parties must be assessed.

2. NEGLIGENCE — COMPARATIVE NEGLIGENCE — PROXIMATE CAUSE — DIRECTED VERDICT.

Where it is established that a party's negligence was a proximate, although not the sole, cause of an injury, the party's motion for a directed verdict is properly denied.

*Theodore Goldberg* and *Arthur L. Petersen* for the plaintiff.

*Joselyn, Rowe, Grinnan, Hayes & Feldman, P.C.* (by *James J. Hayes, Jr.*); (*Gromek, Bendure & Thomas,* by *Carl L. Gromek* and *Nancy L. Bosh,* of counsel), for the defendant.

Amici Curiae:

*Baron & Budd* (by *Russell Budd*).

*Bockoff & Zamler, P.C.* (by *Patrick J. Bruetsch*), and *Daryl Royal.*

*Egler, Anstandig, Garrett & Riley* (by *Patrick J. Riley*).

*Harvey, Kruse, Westen & Milan, P.C.* (by *Ronald E. Westen* and *Dale R. Burmeister*).

*Michael B. Serling.*

CAVANAGH, J. In this wrongful death action, we are asked to determine whether sufficient evidence was presented to establish a causal connection between decedent's six-month exposure to an asbestos product manufactured by defendant and the decedent's subsequent development of lung

cancer. We are also asked to consider the propriety of the trial court's refusal to accept the jury's finding that decedent was fifty-five percent negligent due to his heavy and sustained use of cigarettes.

This two-fold inquiry requires us to examine issues of foreseeable risk and causation in the context of our comparative negligence system. It is also necessary for us to consider the extent to which the "particular risk doctrine" contained in 2 Restatement Torts, 2d, § 468, p 516, applies in a system premised on relative fault.

I

Plaintiff's decedent, Charles Rand, worked as an asbestos worker for twenty-six years. He also smoked cigarettes for thirty years at a rate of two packs per day. Rand was diagnosed as having adenocarcinoma (lung cancer) in January 1978. He died on March 23, 1978, at the age of forty-eight.

Following Rand's death, his widow and personal representative of his estate[1] filed the instant action against nine manufacturers and distributors of insulation containing asbestos to which Rand had been exposed as an insulation worker.[2] Plaintiff claimed that defendants failed to give adequate warnings regarding the health hazards associated with asbestos and also failed to give adequate instructions regarding its use. Plaintiff settled with three defendants prior to trial and with five others during the course of the trial. Thus, the

---

[1] Charlotte Rand died during the course of this action, and on September 1, 1983, Daniel Brisboy was named as the successor personal representative of the estate of Charles R. Rand.

[2] The original complaint also named as defendants Owens-Corning Fiberglas Corp., Owens-Illinois Corp., Nicolet, Inc., Johns-Manville Corp., Forty-Eight Insulations, Inc., Mechanical Insulation Services, Inc., Raybestos-Manhattan, Inc., and Unarco Industries, Inc.

case proceeded to verdict solely against defendant Fibreboard.

Trial testimony established that Rand was exposed to "Pabco Caltemp" pipecovering while he worked on an insulation job in Tacoma, Washington, for six to nine months in 1960. Pabco Caltemp contained asbestos and was manufacturered exclusively by Fibreboard Corp. One of Rand's co-workers at this job site testified that the job involved insulating steam pipes by applying a double layer of pipe covering, work that generated large amounts of visible dust.

The principal issue at trial was whether and to what extent decedent's exposure to asbestos and his long-term use of cigarettes were causally related to the lung cancer that led to his death. The medical experts presented by the parties disagreed as to whether Rand's lung cancer was solely associated with his cigarette smoking, solely associated with his exposure to asbestos, independently caused by both, or caused by the "synergistic" or multiplicative effect of the two carcinogens.

Dr. Joseph Wagoner, an epidemiologist who testified for plaintiff, stated that adenocarcinoma is generally associated with exposure to asbestos rather than to cigarette smoking. He acknowledged, however, that cigarette smoking can cause adenocarcinoma and that when smoking and exposure to asbestos are combined, the risk of developing cancer is heightened.

Dr. Leighton Kong, who performed the autopsy, stated that Rand's death was caused by pulmonary adenocarcinoma, primarily in the upper lobe of the left lung. Kong explained that he found a massive amount of asbestos material in Rand's lungs and that there was a relationship between the presence of asbestos fibers and Rand's development of lung cancer. He agreed that cigarette smoking

could have been the cause of Rand's lung cancer, but he opined that there is a stronger causal link between exposure to asbestos and lung cancer than there is between cigarette smoking and lung cancer.

Dr. Gerrit Schepers, another of plaintiff's experts, testified that the amount of asbestos present in Rand's lungs plus the asbestosis or lung scarring resulting from the presence of the asbestos fibers caused the adenocarcinoma. According to Schepers, the asbestos in Rand's lungs and the asbestosis were major factors leading to the lung cancer, but he acknowledged that Rand's history of cigarette smoking was a minor contributing factor.

Defendant's expert, Dr. Harry Demopoulos, stated that Rand's adenocarcinoma was solely related to his cigarette smoking. He noted that Rand exhibited emphysema and accompanying fibrosis, the most common results of cigarette smoking. Dr. William Weiss agreed that Rand had emphysema and adenocarcinoma associated with cigarette smoking. He testified that while asbestosis and cigarette smoking can produce a synergistic effect increasing the risk of lung cancer, Rand had no evidence of pulmonary asbestosis. Thus, he attributed Rand's cancer solely to his cigarette smoking.

To avoid retrial, the trial judge agreed to submit the question of Rand's comparative negligence to the jury. He indicated, however, that he would disregard any jury finding on that question. He explained:

> There's no evidence in this record from which a reasonable mind could conclude that Mr. Rand had knowledge or should've had knowledge that as a cigarette smoker his exposure to asbestos containing insulation would cause a cancerous condition that was asbestos related in origin, though his

smoking could've been a cause or a contributing factor to his ultimate cause of death. His conduct was such that under those circumstances he could not [be] deemed, as a matter of law, to be guilty of any negligence for one of knowledge as to the risks involved.

In a special verdict, the jury found Fibreboard negligent and determined that its negligence was a proximate cause of Rand's injuries. The jury also found that Charles Rand was negligent, that his negligence was a proximate cause of his death, and that his negligence represented fifty-five percent of the combined negligence of the parties.

In accordance with his previous ruling, the trial judge disregarded the jury's finding of comparative negligence. The total amount of the settlements was deducted from the total amount of damages assessed by the jury, and the court entered judgment against Fibreboard in the amount of $104,-500.

The Court of Appeals affirmed, *Brisboy v Fibreboard Corp,* 148 Mich App 298; 384 NW2d 39 (1985), and we granted leave to appeal, 426 Mich 863 (1986).

II

Fibreboard claims that plaintiff produced insufficient evidence to support the jury's finding of a causal connection between Rand's exposure to its product and his subsequent illness and death. Fibreboard notes that Rand's exposure to its product was limited and that, in view of all other potential contributing factors, its negligence could not be considered the legal cause of Rand's lung cancer. Thus, it argues, the trial court improperly denied defendant's motion for directed verdict.

Defendant mischaracterizes the extent of plaintiff's burden of proof. To defeat a directed verdict

motion, it was not necessary for plaintiff to establish that defendant's negligence was the sole cause of Rand's death or that, as a matter of statistical probability, it was Rand's exposure to defendant's product, as opposed to his exposure to other products containing asbestos, that led to his death.

Liability does not attach unless an actor's negligent conduct is a proximate or legal cause of the harm suffered. The facts of this case illustrate the principle that there may be more than one proximate cause of an injury.[3] *Brackins v Olympia, Inc,* 316 Mich 275; 25 NW2d 197 (1946). As this Court recognized in *McMillian v Vliet,* 422 Mich 570, 577; 374 NW2d 679 (1985), "[t]wo causes frequently operate concurrently so that both constitute a direct proximate cause of the resulting harm." Thus, defendant cannot escape liability for its negligent conduct merely because the negligence of others may also have contributed to the harm caused. Consequently, it was sufficient for plaintiff to establish that Fibreboard's negligence was a proximate cause of Rand's injuries. *Kirby v Larson,* 400 Mich 585, 605; 256 NW2d 400 (1977); *Caldwell v Fox,* 394 Mich 401, 420, n 5; 231 NW2d 46 (1975).

When a number of factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury. *Glinski v Szylling,* 358 Mich 182, 203; 99 NW2d 637 (1959); *McLean v Rogers,* 100 Mich App 734, 737; 300 NW2d 389 (1980). This "substantial fac-

---

[3] See SJI2d 15.03:

> There may be more than one proximate cause. To be a proximate cause, the claimed negligence . . . need not be the only cause nor the last cause. A cause may be proximate although it and another cause act at the same time or in combination to produce the occurrence.

tor" test of legal causation[4] is outlined in 2 Restatement Torts, 2d, § 431, p 428.

As the Court of Appeals recognized, proof of causation in asbestos cases has been problematic. In *Borel v Fibreboard Paper Products Corp,* 493 F2d 1076 (CA 5, 1973), cert den 419 US 869 (1974), the court was confronted with essentially the same "substantial factor" argument advanced by the present defendant. The case involved multiple defendants, and the court recognized that each exposure to asbestos dust may constitute a separate and compensable injury.

> In the instant case, it is impossible, as a practical matter, to determine with absolute certainty which particular exposure to asbestos dust resulted in injury to Borel. It is undisputed, however, that Borel contracted asbestosis from inhaling asbestos dust and that he was exposed to the products of all the defendants on many occasions. It was also established that the effect of exposure to asbestos dust is cumulative, that is, each exposure may result in an additional and separate injury. We think, therefore, that on the basis of strong circumstantial evidence the jury could find that each defendant was the cause in fact of some injury to Borel. [*Borel, supra,* 1094.]

We have previously recognized that even a limited exposure to asbestos may cause harm which does not manifest itself for many years due to the lengthy latency period. *Larson v Johns-Manville Sales Corp,* 427 Mich 301, 306-308; 399 NW2d 1 (1986).[5] Consequently, due to the fact that Rand

---

[4] Woods, Comparative Fault (2d ed), §§ 5:1-5:2, pp 103-113.

[5] See *Larson, supra,* 306-308, and articles cited therein for a discussion of the nature of asbestos and asbestos-related diseases, including asbestosis, lung cancer, and mesothelioma. See also *Ins Co of North America v Forty-Eight Insulations,* 451 F Supp 1230, 1236-1237 (ED Mich, 1978).

was repeatedly exposed to asbestos products during his career, it was impossible for plaintiff to prove with absolute certainty that Rand's exposure to defendant's product was the sole cause of the lung cancer that led to his death. Such certainty is not required, however, and plaintiff's difficulty in proof does not relieve defendant of liability, nor does it require the grant of a directed verdict in defendant's favor.

Directed verdicts are appropriate only when no factual question exists upon which reasonable minds may differ. In reviewing the trial court's denial of Fibreboard's motion for directed verdict, we view the testimony and legitimate inferences drawn from that testimony in a light most favorable to plaintiff. *Caldwell v Fox, supra,* 407.

On the facts of this case, we believe that a jury reasonably could have concluded that defendant's negligence was a substantial factor in bringing about the lung cancer that led to the death of Charles Rand. The proofs established that Rand suffered repeated and heavy exposure to Fibreboard's Pabco Caltemp pipecovering for a period of six to nine months. The work generated large quantities of visible dust, which implied an extreme exposure to asbestos. The evidence suggested that Rand had a more limited exposure to asbestos products prior to 1960 and few if any exposures after the early 1970's when asbestos was phased out of insulation materials.

Mr. Rand's autopsy revealed a massive amount of asbestos fiber in the lungs, and Dr. Schepers testified that the presence of the fibers and the resulting asbestosis were the major factors causing Rand's lung cancer. Dr. Schepers explained that heavy exposure to asbestos for even one month can lead to death many years later.

We conclude that, in view of this evidence, a

directed verdict in defendant's favor would have been inappropriate. The jury could have concluded that Rand's exposure to defendant's product was significant in terms of intensity and when viewed in the scope of Rand's entire work history. Such an intense exposure for six to nine months could reasonably be considered a substantial factor in bringing about Rand's injuries. We recognize that this version of the facts is not supported by the testimony of defendant's experts. However, weighing the evidence is a task within the jury's function. *Caldwell v Fox, supra,* 410.

III

The trial court and the Court of Appeals declined to apply comparative negligence to reduce plaintiff's recovery. Both courts refused to give effect to the jury's finding that Charles Rand's negligence was fifty-five percent of the combined negligence of the parties, since Rand was unaware that his smoking heightened his risk of developing lung cancer.[6]

The Court of Appeals stated that the "decedent cannot be said to have been negligent with regard

---

[6] In *Larson v Johns-Manville Corp, supra,* 317, we recognized the difficulty in proving causation when a victim who has been exposed to asbestos also smoked cigarettes.

> [I]t is difficult to quantify the additional risk of lung cancer posed by the asbestos exposure when, as in this case, the victim smoked cigarettes and cigarettes alone are a well-documented cause of lung cancer.

Several commentators have addressed the relationship between cigarette smoking, asbestos exposure, and the development of lung cancer. See, e.g., Mansfield, *Asbestos: The cases and the insurance problem,* 15 Forum 860, 863 (1980); Green, *The inability of offensive collateral estoppel to fulfill its promise: An examination of estoppel in asbestos litigation,* 70 Iowa L R 141, 158 (1984); Special Project, *An analysis of the legal, social, and political issues raised by asbestos litigation,* 36 Vand L R 573, 631-633 (1983).

to the specific hazard which he actually encountered." 148 Mich App 307. The Court relied on the particular risk doctrine found in 2 Restatement Torts, 2d, § 468, p 516, which provides:

> The fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar his recovery unless his harm results from one of the hazards which make his conduct negligent.

The trial court acknowledged that Rand's smoking habit could have caused or contributed to the ultimate cause of his death. The Court of Appeals agreed, stating that the decedent could be found to have assumed the risk of contracting cigarette-related lung cancer. Nevertheless, both courts apparently assumed that the jury's determination that defendant was negligent in exposing Rand to its product without proper warnings or safety devices conclusively established that his lung cancer was caused by asbestos. Consequently, both courts determined that the particular risk to which Rand was exposed was asbestos-related cancer. We reject this determination for several reasons.

The jury did not define the particular risk to which Rand was exposed. During the course of the trial, conflicting evidence outlining alternative theories of causation was presented. Consistent with the evidence, the jury could have determined that Rand's lung cancer was solely caused by exposure to asbestos, solely caused by cigarette smoking, independently caused by both, or caused by the synergistic effect of the two carcinogens. The proximate cause or causes of decedent's lung cancer was a question of fact to be determined by the jury. The decisions of the lower courts ignore the jury's finding that exposure to defendant's product

and Rand's smoking habit were concurrent causes of Rand's lung cancer and resulting death.[7]

Furthermore, we conclude that both courts defined the risk of harm too narrowly. Undoubtedly, the jury considered the risk of harm to be the development of lung cancer, and the jurors proceeded to assess the relative fault of the parties in accordance with our system of pure comparative negligence. *Placek v Sterling Heights*, 405 Mich 638; 275 NW2d 511 (1979).

We hold that the risk of developing lung cancer is within the scope of the risk assumed by a smoker, whether or not the risk is enhanced by other factors. So long as there is a finding of proximate cause in each case, the negligence of the parties must be compared. We reject plaintiff's claim that there is no rational basis for the jury's apportionment of fault and note that juries are frequently called upon to make such judgments. *Kirby, supra*, 646-647.

In narrowly defining the risk of harm to the

---

[7] [T]he jury was submitted the following questions and gave the following answers:

"*Question No.* 1: Was Fibreboard negligent?

"*Answer:* Yes.

"*Question No.* 2: Was the Defendant's negligence a proximate cause of the injury or damage to the Plaintiff?

"*Answer:* Yes.

"*Question No.* 3: What is the total amount of Plaintiff's damages?

"*Answer:* $367,000.00.

"*Question No.* 4: Was Charles Rand negligent?

"*Answer:* Yes.

"*Question No.* 5: Was Charles Rand's negligence a proximate cause of his death?

"*Answer:* Yes.

"*Question No.* 6: Using 100% as the total combined negligence which proximately caused the injury or damages to Charles Rand, what percentage of such negligence is attributable to Charles Rand?

"*Answer:* 55%." [Trial court judgment of November 1, 1982.]

decedent, the Court of Appeals relied on *James v Pennsylvania R Co,* 101 F Supp 241 (WD Pa, 1951), aff'd 196 F2d 1021 (CA 3, 1952). We find this case readily distinguishable from the present case. In *James,* the court upheld the trial court's refusal to instruct the jury on plaintiff's negligence in engaging in sandblasting after he had received medical advice not to do so. However, that advice was based on a diagnosis of sinusitis, and plaintiff sought recovery for silicosis, as to which there had been no medical recommendations. We find that the *James* decision has no application to the present case, since the risk of contracting lung cancer through smoking was precisely the hazard that made Rand's conduct negligent.

We have previously stated that it is inadvisable to attempt to rigidly apply a Restatement section to a particular set of facts without reference to the policies underlying the rule.

> Unlike a statute, which expresses a legislative directive for the treatment of future cases, the Restatement seeks primarily to distill the teachings of decided cases and is descriptive. While its drafters may sometimes strive to choose "the better rule" or to predict or shape the development of the law, its influence depends upon its persuasiveness. Even where a particular Restatement section has received specific judicial endorsement, cases where that section is invoked must be decided by reference to the policies and precedents underlying the rule restated. Textual analysis of the Restatement is useful only to the extent that it illuminates these fundamental considerations. [*Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1981), reh den 411 Mich 1154 (1981).]

Due to the complete bar of contributory negligence, courts took a more restrictive approach to contributory negligence and applied the particular

risk doctrine to mitigate the harshness of the contributory negligence system. The drafters of the Restatement of Torts, 2d, recognized this fact in comment c to Restatement, § 468, p 518:

> There is a difference to be noted between negligence and contributory negligence. Where the negligence of a defendant creates a risk of a particular harm, occurring in a particular manner, and the same harm is in fact brought about in another manner, through the operation of some intervening force which was not one of the hazards making up the original risk, the defendant normally is not relieved of responsibility by the intervention of the force, and is liable for the harm. But where the negligence of the plaintiff creates a risk of a particular harm to him, occurring in a particular manner, and the same harm is in fact brought about by the intervention of a force which was not one of the original hazards, the plaintiff is not barred from recovery. *This difference is to be attributed to the more restrictive attitude of the courts toward contributory negligence, as compared with negligence, and their tendency to confine it within somewhat narrower limits.* [Citation omitted, emphasis added.]

This practice of narrowly defining the foreseeable risk of harm for the purpose of determining whether plaintiff was contributorily negligent led to extreme results. Prosser & Keeton, Torts (5th ed), § 65, pp 457-458.[8] Moreover, the policies underlying Restatement § 468 do not apply with equal force in a comparative negligence system, and risks need not be as narrowly defined. One com-

---

[8] For example, in *Furukawa v Ogawa*, 236 F2d 272 (CA 9, 1956), plaintiff fell from a ramp cluttered with debris and landed in a garbage pit. During the fall, his leg caught on a projection from defendant's truck which was parked in the garbage pit. Plaintiff was not barred from recovery for his injuries, since his negligence was determined not to extend to the risk of falling onto a projection from a truck.

mentator has recently questioned the extent of the particular risk doctrine's application under comparative negligence when the question is whether a plaintiff's negligence is a proximate cause of his injuries.

> The reason that a more equitable handling of foreseeable risk issues as between plaintiff and defendant is likely to occur under comparative negligence is that the court is no longer constrained to find an escape from the contributory negligence defense. Of course, where the accident that befell a plaintiff is different from the risk he might have anticipated, this can and should be taken into account by the jury in determining plaintiff's relative degree of negligence in any comparative negligence system.
>
> * * *
>
> In sum, a comparative negligence system allows a court to be more "even-handed" with the application of proximate cause concepts in regard to both plaintiffs and defendants. Because of this, lawyers and courts should be suspicious of old contributory negligence cases where the "risk" or "hazard" incurred by plaintiff's contributory negligence was narrowly confined by courts. [Schwartz, Comparative Negligence (2d ed), § 4.5, pp 88-89.]

Plaintiff contends that there are compelling policy reasons supporting the application of § 468 in this case. Plaintiff notes the need to maximize incentives for manufacturers to develop safe products and to maintain adequate safety measures in the workplace.

We addressed and rejected a similar claim in *Hardy v Monsanto Enviro-Chem Systems, Inc,* 414 Mich 29; 323 NW2d 270 (1982). In *Hardy, supra,* 38, we recognized that "the defense of comparative negligence serves not to undermine but to enhance safety in the workplace," and we held that the

defense of comparative negligence is available in cases involving the adequacy of safety devices in the workplace.

Consistent with principles of comparative negligence, defendant should only be held liable for damages causally related to its negligence. The decision of the Court of Appeals would expand defendant's liability and upset the balance between causation and liability we struck in *Placek, supra,* 661, when we stated:

> "What pure comparative negligence does is hold a person fully responsible for his or her acts and to the full extent to which they cause injury. That is justice."

### IV

In summary, we are in accord with the determination of the Court of Appeals that there was sufficient evidence that Charles Rand's exposure to defendant's asbestos product was a substantial factor in bringing about the lung cancer that led to his death. Thus, the trial court properly denied defendant's motion for directed verdict.

We decline, however, to narrowly construe the risk of harm to decedent so as to apply the particular risk doctrine. The narrow application of that doctrine in a system that recognizes and gives effect to the relative fault of each party prevents defendants from obtaining the relief to which they are entitled.

We remand this case to the trial court to enter judgment and apportion damages in accordance with the jury's verdict.

RILEY, C.J., and LEVIN, BRICKLEY, BOYLE, and GRIFFIN, JJ., concurred with CAVANAGH, J.

ARCHER, J. (*concurring in part and dissenting in part.*) I agree with the majority's finding that the trial court and the Court of Appeals were correct in rejecting defendant's motion for directed verdict.

As to part III, I do not agree with the majority's analysis and the pronouncements stated therein. Therefore, I concur in the result only. It is appropriate to remand this case to the trial court for entry of judgment and apportionment of damages.