**Irene ANJESKI, Individually and as Personal Representative of the Heirs and Estate of Robert Anjeski, Plaintiff,**

v.

**KEENE BUILDING & DEVELOPMENT COMPANY, a New York Corporation, Owens–Illinois, Inc., an Ohio Corporation, the Celotex Corporation, a Delaware Corporation, Defendants.**

Civ. A. No. 87–4213.

United States District Court,
E.D. Michigan, S.D.

April 25, 1989.

David L. Ravid, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, Detroit, Mich., Joseph F. Bruegger, Baron & Budd, Dallas, Tex., for plaintiff.

Clayton F. Farrell, Collins, Einhorn & Farrell, Southfield, Mich., for Celotex.

Ronald E. Westen, Detroit, Mich., for Keene.

James J. Hayes, Jr., Garan, Lucow, Miller, Seward, Cooper & Becker, P.C., Detroit, Mich., and Clayton F. Farrell, Collins, Einhorn & Farrell, Southfield, Mich., for Owens–Illinois.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

Before me are the separate motions for summary judgment by each of the remaining defendants in this matter; namely Keene Building and Development Company, The Celotex Corporation and Owens–Il-

linois, Inc. (defendants). The question presented is whether a jury could reasonably infer from the *de bene esse* deposition of plaintiff's sole product identification witness, Homer Kilpatrick that plaintiff's decedent was exposed to the defendants' products. I conclude that it could not. Therefore, I grant each of the defendants' motions.

Robert Anjeski died of mesothelioma on January 24, 1988. His wife, Irene, brings suit on her own behalf and on behalf of her husband's estate alleging that Anjeski's death was caused by exposure to asbestos products of various manufacturers, including defendants. The alleged exposure occurred while Anjeski was a boiler room operator aboard the U.S.S. Lapwing (Lapwing) during World War II. Anjeski died before his *de bene esse* deposition could be taken. Plaintiff relies solely on co-worker testimony for product identification evidence. Kilpatrick is the only product identification witness plaintiff will produce and he has refused to travel to Detroit to testify at the trial. Thus, the only product identification evidence plaintiff could produce at trial is the Kilpatrick *de bene esse* deposition now before me.

## I.

*Applicable Standard*

At the hearing on this motion, the suggestion was raised that the standard applicable to directed verdicts be applied to this motion. I conclude that in this case the distinction between a motion for summary judgment and one for a directed verdict is purely academic. I must determine whether a reasonable jury could conclude that the evidence concerning product identification preponderates in favor of plaintiff viewing the Kilpatrick deposition in the light most favorable to plaintiff and giving plaintiff the benefit of every legitimate inference from Kilpatrick's testimony.

Whether this motion is viewed as a motion for summary judgment pursuant to Fed.R.Civ.P. 56 or for a directed verdict pursuant to Fed.R.Civ.P. 50, the essentials

of the inquiry are the same. The moving party has the burden of showing that there is no genuine issue of material fact that a jury need resolve and that the movant is entitled to judgment as a matter of law. All inferences are drawn in favor of the non-moving party. 10 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure*, Civil 2d § 2713.1 at 614–615 (1983) (*Federal Practice and Procedure*); *see also* 9 C. Wright and A. Miller, *Federal Practice and Procedure*, Civil § 2532 (1971). The difference between the two types of motions is mostly one of timing. Usually, motions for directed verdicts are heard either after the plaintiff has rested or after the close of all the evidence; motions for summary judgment occur before trial on the basis of affidavits, depositions and other writings taken under oath.

Nonetheless, it has been suggested that courts should be more reluctant to grant summary judgment as opposed to a directed verdict because with the former the evidence has yet to be fully developed. *See Pierce v. Ford Motor Company,* 190 F.2d 910 (CA 4 1951); *but see* 10 *Federal Practice and Procedure*, § 2713.1 at 618–619 (*criticizing Pierce*). This reluctance is felt most acutely where the credibility of witnesses may be decisive. *See* D. Curie, *Thoughts on Directed Verdicts and Summary Judgments,* 45 U.Chi.L.Rev. 72, 79 n. 39 (1977). Moreover, denial of summary judgment does not preclude granting a directed verdict later in the proceedings. *Voutour v. Vitale,* 761 F.2d 812, 822 (CA 1 1985), *cert. denied sub nom Town of Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

As defense counsel has aptly put it, plaintiff's evidence with respect to product identification is in a box. Kilpatrick is plaintiff's only product identification witness. He lives beyond this court's subpoena power and has refused to travel to Detroit to testify at trial. There will never be an opportunity to observe Kilpatrick's demeanor on the stand. The defendants have

rested their case with respect to product identification for purposes of this motion. Therefore, the only evidence that will ever be introduced in this case is already in hand. It follows that any reluctance that I might ordinarily entertain with respect to motions for summary judgment is not called for here. *See Krimlofski v. United States,* 190 F.Supp. 734, 736 (N.D.Iowa 1961) (Parties agreed to submit all of their evidence to the court for it to determine whether the evidence presented a case submissible to a jury. The court stated: "The situation is the same as if adverse parties had presented all of their evidence with a jury present and then motions were made for directed verdicts. The situation is analogous to that which would be presented where a motion for summary judgment was made in advance of trial and the Court had before it in connection with that motion all of the evidence of the parties.").

## II.

*Evidence With Respect to Product Information Does Not Preponderate*

The threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer. *Abel v. Eli Lilly & Co.,* 418 Mich. 311, 324, 343 N.W.2d 164 (1984), *cert. denied sub nom E.R. Squibb & Sons, Inc. v. Abel,* 469 U.S. 833, 105 S.Ct. 123, 83 L.Ed.2d 65 (1984). Michigan follows the test of proximate causation stated in § 431 of the Second Restatement of Torts. *Brisboy v. Fibreboard Corp.,* 429 Mich. 540, 548, 418 N.W.2d 650 (1988). Under the Restatement, a plaintiff cannot establish the requisite connection between his injury and a particular asbestos product manufacturer by showing merely that the asbestos manufacturer's product was present somewhere at his place of work. *Lohrmann v. Pittsburgh Corning Corp.,* 782 F.2d 1156 (CA 4 1986) (applying Restatement Torts (Second) § 431). A plaintiff must establish that the manufacturer's product was used at the specific site within the workplace where he worked. *Roehling v. Nat. Gypsum Co. Gold Bond Bldg.,* 786 F.2d 1225, 1228, *cf.* 1228 n. 6 (CA 4 1986); *see also Blackston*

*v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1481–82 (CA 11 1985). The question therefore is whether a jury could legitimately infer from Kilpatrick's testimony that defendants' products were present and used in the boiler room where Anjeski worked.

Although a jury could reasonably conclude that defendants' products were aboard the Lapwing during the six-month period that both he and Anjeski were also aboard that ship, Kilpatrick could not say which products were sent to the boiler room where Anjeski worked. P.Ex. 2 at 28–29. Asbestos products were also used or stored in the gunnery and supply departments. Plaintiff has produced no evidence from which a jury could reasonably infer which of the five products identified were actually sent to the boiler room. Plaintiff would infer that because defendants' asbestos products were aboard the Lapwing at the appropriate time, and because Kilpatrick testified to sending asbestos products to the boiler room, that defendants' products must have been sent to the boiler room. But Kilpatrick also testified that the sailors sometimes rejected the supplies sent by the loading crew. P.Ex 2 at 28. The products used in the boiler room may have been all Kaylo, all Owens–Illinois, all Celotex, all U.S. Gypsum, or all Johns–Manville, or some combination of any of these products. There is no basis from which to infer what that combination was because Kilpatrick does not tell us. At best plaintiff has established that defendants' products were aboard the Lapwing. This, however, is not enough to establish proximate causation.

Moreover, Kilpatrick does not testify that Anjeski was ever present when the asbestos insulation was being applied. Rather, he testified that boiler room workers, such as Anjeski, were called upon to make insulation repairs when the ship was at sea and that such repairs created a lot of dust. From this fact Kilpatrick infers that at one time or another Anjeski was called upon to make insulation repairs. P.Ex. 2 at 22. Yet, there is no basis for this surmise. Kilpatrick testified that repairs

needed to be made at sea two to four times every six months. For purposes of this case, Anjeski's "window of exposure" is the only six months in which Kilpatrick was also aboard. Without evidence concerning Anjeski's work schedule, a jury could only conclude that Anjeski was on duty when repairs were made by conjecture and speculation.

The cases cited by plaintiff are inapposite. In *Collins v. Raymark Industries,* No. CA–285–055, Slip op. (S.D.Ga.1986), the court held that plaintiff's co-worker identification witness need not actually see the worker use a particular product to avoid summary judgment. Unlike the case here, the co-worker in *Collins* testified in his deposition that the worker "was often around" the moving defendants' products and that he had once observed the worker's hat covered with a thick layer of asbestos dust. *Collins,* Slip op. at 2–3.

In *Roehling,* the court reversed the trial court's grant of summary judgment. Roehling placed himself at the point of exposure in his own deposition testimony and co-workers who worked at the same site and same time as Roehling identified the various defendants' products by name. *Roehling,* 786 F.2d at 1227–8.

The case provided in Exhibit B of Plaintiff's Supplemental Brief follows *Odum v. Celotex,* 764 F.2d 1486 (11th Cir.1985). Plaintiffs in *Odum* relied on two co-workers. Both co-workers worked at precisely the same work site that Odum had worked at. One worker remembered using Philip–Carey products and working with the second worker. The second worker could not identify Philip–Carey products, but remembered working with the first worker as well as Odum. *Odum,* 764 F.2d at 1488. Here Kilpatrick did not work in the boiler room and can only surmise that Anjeski worked with defendants' products.

*Goodman v. Armstrong World Industries,* No. 87–0563–AH, Slip op. (S.D.Ala. 1988), Exhibit C to Plaintiff's Supplemental Brief, presents a straightforward case of co-worker product identification. Goodman remembered working with certain co-workers. The court granted summary judgment in favor of manufacturers not identified by the co-workers, and denied summary judgment with respect to manufacturers identified by the co-workers.

The court in *Jackson v. Johns–Manville Sales Corp.,* 727 F.2d 506 (CA 5 1984), *cert. den.* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), found (*in dicta*) that circumstantial evidence tending to show that defendant Raybestos–Manhattan's products were used on seven to ten out of sixty-nine ship hulls Jackson worked on, and circumstantial evidence tending to show that defendant Johns–Manville's products were used on thirty or more of these hulls, presented a jury question with respect to causation in fact as to these two defendants.

Like *Goodman,* this case presents nothing more than a straightforward application of co-worker product identification. The co-workers testified that defendants' products were used on certain hulls that Jackson did, in fact, work on. *Jackson,* 727 F.2d at 523.

In *Martin v. American Petrofina, Inc.,* 779 F.2d 250 (CA 5 1985), *modified on other grounds,* 785 F.2d 543 (1986), the court affirmed the district court's denial of Benjamin Foster's motion for judgment notwithstanding the verdict. Martin worked as a pipefitter at an Exxon plant in Baton Rouge, Louisiana. He testified that a substantial part of his duties involved tearing out asbestos-laden "mastics" which covered Exxon's pipes. Martin could not identify the manufacturer, but co-workers testified that Benjamin Foster products were used "throughout" the Exxon plant during the time Martin was employed there. Martin worked at many sites throughout the plant. Here, plaintiff concedes that Anjeski's exposure could only have occurred in the boiler room. Kilpatrick's testimony may establish that asbestos products were used in the boiler room, but it does not tend to establish whether any of defendants' products were used there.

Similarly, in *Lockwood v. AC & S, Inc.,* 109 Wash.2d 235, 744 P.2d 605 (1987), co-workers placed the defendant's product at

least at one of Lockwood's work sites. Lockwood testified that he had worked on the overhaul of the ship George Washington at the Puget Sound Bridge and Dredge Shipyard between 1947 and 1948. A co-worker testified that the same Raymark asbestos cloth he had used earlier at the Todd Shipyards was also used in the overhaul of the George Washington at the Puget Sound Bridge and Dredge in 1947 and 1948. It appears that Lockwood worked at many sites throughout the George Washington. There was expert testimony to the effect that once released, asbestos dust drifts and can be inhaled even by those not directly working with the insulation. Thus, a jury could have reasonably inferred exposure to Raymark asbestos products. The difference in this case is that Anjeski's exposure is alleged to have occurred in a specific spot, the boiler room, and there is no basis to determine which, if any, of defendants' products were used in the boiler room.

For the foregoing reasons defendants' motions for summary judgment are hereby GRANTED.

IT IS SO ORDERED.