RAKER, J.,
concurring and dissenting, which BATTAGLIA, J., joins.
I disagree with the analysis of the majority as to the apportionment issue in the Hewitt case and thus, dissent from that portion of the majority opinion. I join the majority opinion in all other respects. For the reasons explained below, pursuant to Maryland Rule 8-604(d), I would remand the Hewitt case to the circuit court for a Fry e-Reed hearing to determine whether the defense expert’s theory that Hewitt’s injury is capable of apportionment is generally accepted in the scientific community.
*377 I believe that the Court of Special Appeals, Judge Shirley Watts writing for the Court, got it right in its analysis that apportionment concerns causation, not comparative negligence principles. I disagree with the majority’s holding that in all cases, death is an indivisible injury as a matter of law and hence, not suitable for apportionment.
Death may be indivisible as to result, but it is not per se incapable of apportionment. Many courts around the country have permitted apportionment in death cases. See e.g., Brisboy v. Fibreboard Corp., 429 Mich. 540, 418 N.W.2d 650, 655 (1988) (permitting apportionment of damages in a wrongful death action based on smoking history and asbestos exposure); Champagne v. Raybestos-Manhattan, Inc., 212 Conn. 509, 562 A.2d 1100, 1118 (1989) (same); see also Poliseno v. General Motors Corp., 328 N.J.Super. 41, 744 A.2d 679, 687 (2000) (concluding that while death is indivisible as to result, it is capable of apportionment in terms of causation). In Maryland, the State Workers’ Compensation Commission is compelled statutorily to apportion damages in workers’ compensation cases involving a deceased employee. See Maryland Code (1991, 2008 RepLVol.) § 9-608 (noting that the “Commission shall determine the percentage that an occupational disease contributed to the death or disability of a covered employee.... ”). (emphasis added). In my view, a categorical rule that death is an indivisible injury incapable of apportionment speeds past an accepted principle of law: death can be capable of apportionment as to damages, but not as to fault. See Restatement (Third) of Torts: Physical and Emotional Harm § 28, cmt. d (2010) (“Death as an injury may not be divisible, but damages for death are divisible.”); see also Gerald W. Boston, Toxic Apportionment: A Causation and Risk Contribution Model, 25 Envtl. L. 549, 568-69 (1995) (stating that although “comment i [to the Restatement (Second) of Torts § 443A] states that death is the quintessential indivisible harm ... deaths attributable to toxic causes, as when a plaintiff dies from lung cancer brought about by the combined effects of smoking and asbestos exposure, each of the contributing *378 causes can be compared and the harm apportioned on that basis.”).
In addition to the notion that death has been held to be an indivisible injury, the majority relies improperly on the one-sided evidence presented at trial to support its conclusion. The trial court, however, failed to consider the defendant’s evidence on the issue of apportionment and relied solely on the plaintiffs experts, and the trial judge’s own understanding, to support its ruling rejecting apportionment. Dr. Kerby, defendant’s expert, was prepared to testify to the risk assessment involved with the causes at issue: smoking and exposure to asbestos. Dr. Kerby’s proffer indicates that he would have testified that “the relative risks for each [history of smoking and exposure to asbestos] to the development of [the plaintiffs] lung cancer and death therefrom is 3 to 1, cigarette smoking to asbestos.” Further, he would have opined that the relative contribution of Hewitt’s tobacco use and of his exposure to asbestos to the development of his lung cancer was 75% and 25%. The expert’s testimony could have formed the basis for a reasonable basis of apportioning damages. See Boston, supra, at 555 (concluding that “[i]f the plaintiffs asbestos exposure and his smoking are both shown to be causal factors in the plaintiffs lung cancer, then the loss is necessarily capable of apportionment on the basis of the relative risks demonstrated for each kind of toxic exposure.”). I would, instead, remand the case so that a Frye-Reed hearing would be held to determine if the opinion offered by Dr. Kerby met the standards for scientific testimony before it was accepted or rejected. See Blackwell v. Wyeth, 408 Md. 575, 588, 971 A.2d 235, 243 (2009); see also Mayer v. North Arundel Hosp. Ass’n, Inc., 145 Md.App. 235, 254 n. 7, 802 A.2d 483 (2002) (noting that the initial burden is on the plaintiff to establish that a harm is indivisible and that “[a] defendant is free to put on evidence” to the contrary). Doing so, would have permitted the court to make an informed decision as to whether there was a reasonable basis for apportioning the injury. The majority’s per se rule prevents a trial court from *379 evaluating the merit of emerging scientific theories of causation.
Moreover, the question of apportionment, a process although sounding in comparative negligence, is a different animal. See Mayer, 145 Md.App. at 249, 802 A.2d at 491 (noting that in the context of apportionment of damages “we are talking about causal, not fault, apportionment”); Poliseno, 328 N.J.Super. at 55-56, 744 A.2d at 687-88 (explaining the distinction between apportionment based on causation principles and fault); (Boston, supra, at 580-85) (discussing the shortcomings of utilizing comparative fault principles as a justification for apportionment of damages); see also Mayer, 145 Md.App. at 249, 802 A.2d at 491 (noting that because the plaintiff had an injury prior to the negligent act committed by the defendant, “the question becomes one of apportionment of damages”); Maryland Civil Pattern Jury Instructions 10:4 (“A person who had a particular condition before the accident may be awarded damages for the aggravation or worsening of that condition.”). Judge Watts, writing for the Court of Special Appeals, set out a well-reasoned analysis as to why apportionment can be appropriate notwithstanding this Court’s allegiance to contributory negligence. I quote the opinion addressing this issue, in relevant part, as follows:
‘We begin by stating that the issue of apportionment concerns causation, not comparative negligence as appellees urge this Court to determine. Comparative fault or comparative negligence involves determination of the relative percentages of fault between joint tortfeasors — ie. in a negligence action, comparative negligence involves looking at the respective duties and breaches of the joint tortfeasors. Such a system necessarily requires that a jury consider the actions of the joint tortfeasors leading up to the injury to determine whether both were at fault and, if so, how much of the fault each joint tortfeasor should shoulder. Maryland has explicitly rejected adopting comparative fault or comparative negligence in favor of maintaining contributory negligence. See Franklin v. Morrison, 350 Md. 144, 167-68 [711 A.2d 177] (1998); Harrison v. Montgomery Cty. *380 Bd. of Ed., 295 MD. [Md.] 422 [442], 463 [456 A.2d 894] (1983).
Apportionment of damages, on the other hand, involves instances where there are two or more causes and a reasonable basis exists for determining the contribution of each cause to a single harm — i.e. in a negligence action, apportionment of damages involves looking at the causes of the injury, not the duties and breaches of the tortfeasors. Restatement (Second) of Torts, Section 433A(l)(b). Under apportionment, the relative fault of the parties is not considered and the doctrine applies ‘whenever two or more causes have combined to bring about harm to the plaintiff[.]’ Restatement (Second) of Torts, Section 433A, cmt. a. This Court has adopted and applied apportionment of damages in certain cases. See CSX Transp., Inc. v. Bickerstaff, 187 Md.App. [187] at 249-51 [978 A.2d 760 (2009) ] (a FELA case); Cress v. ACandS, Inc., 150 Md.App. [369] at 388-89, 388 n. 11 [820 A.2d 616 (2003) ] (an asbestos case with asbestos industry and cigarette industry defendants); Mayer, 145 Md.App. at 249-50, 254-55 [802 A.2d 483] (a medical negligence case). Thus, the doctrines of apportionment of damages and comparative fault/negligence are distinct and involve different considerations.
Under relevant Maryland case law and the Restatement (Second) of Torts, apportionment of damages between several causes of an injury is appropriate in certain circumstances. Pursuant to Restatement (Second) of Torts, Section 433A(1), apportionment of damages between two or more causes is appropriate ‘where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm.’ Multiple causes may include the combination of acts of two or more parties, an innocent act and a negligent act, or an aggravation of a preexisting injury. Restatement (Second) of Torts, Section 433A, cmt. a.”
I agree with the reasoning of the Court of Special Appeals that apportionment of damages is consistent with tort law in Maryland.
*381 Because the trial court failed to conduct a Frye-Reed hearing, I would order a limited remand for an evidentiary hearing to ascertain whether the defense expert’s theory that Hewitt’s injury is capable of apportionment is generally accepted in the scientific community. See Montgomery Mut. Ins. Co. v. Chesson, 399 Md. 314, 333-34, 923 A.2d 939 (2007) (holding that a trial court’s failure to conduct a Frye-Reed hearing is appropriate for a limited remand because it generally involves matters collateral to the substantive issues of a case and verdicts should not be vacated unnecessarily). On remand, if the trial court finds that the defense expert’s methods and theories satisfy the Frye-Reed test, the trial court should vacate the judgment, order a new trial, and submit the issue of apportionment to the jury. If the court finds to the contrary, the judgment should stand. See id. at 336, 923 A.2d at 951.
Judge BATTAGLIA authorizes me to state that she joins in this concurring and dissenting opinion.