ALAR v MERCY MEMORIAL HOSPITAL

Docket Nos. 139088, 139253. Submitted April 7, 1994, at Detroit. Decided February 6, 1995, at 9:25 A.M.

Christopher M. Alar brought an action in the Monroe Circuit Court against Mercy Memorial Hospital, Gayl Godsell-Stytz, D.O., and Northern Professional Emergency Physicians, P.C., alleging against Dr. Godsell-Stytz claims for damages for breach of the physician-patient privilege and intentional interference with a business relationship. Derivative claims of vicarious liability were brought against Northern Professional, a company providing emergency room physicians to hospitals by contract, and the hospital. The plaintiff also claimed that Dr. Godsell-Stytz' conduct breached a contract entered into between him and the hospital for which the hospital was liable independent of the claims of vicarious liability. The action followed the revocation of the plaintiff's admission to the United States Air Force Academy after the plaintiff's alleged attempted suicide and admission to the emergency room and psychiatric unit at the hospital. The plaintiff's admission to the academy was revoked after a review of the plaintiff's medical records, which occurred after Dr. Godsell-Stytz contacted the academy, without the plaintiff's permission, to notify the academy of the plaintiff's admission to the hospital. The jury found that the doctor was liable for breach of the physician-patient privilege and tortious interference with a business relationship, that the hospital was not vicariously liable for the doctor's tortious conduct, but did breach its contract with the plaintiff, and that Northern Professional was not vicariously liable because the doctor was not its employee. The court, Michael W. LaBeau, J., entered a judgment consistent with the findings of the jury. The hospital appealed from the judgment for the plaintiff, an order denying its motion for judgment notwithstanding the verdict, and an order assessing costs. (Docket No. 139088). The plaintiff cross appealed from the judgment for

REFERENCES

Am Jur 2d, Agency §§ 73, 75, 78-80; Contracts § 164; Physicians, Surgeons, and Other Healers §§ 169, 172, 173; Torts § 26.

Physician's tort liability for unauthorized disclosure of confidential information about patient. 48 ALR4th 668.

Northern Professional, the order assessing costs, the denial of his motions to amend the special verdict and for judgment notwithstanding the verdict, and the grant of costs to the hospital. Dr. Godsell-Stytz appealed from the judgment against her and the denial of her motion for judgment notwithstanding the verdict. (Docket No. 139253). The appeals were consolidated.

The Court of Appeals *held:*

1. The trial court erred in denying the hospital's motions for a directed verdict and judgment notwithstanding the verdict because the plaintiff failed to prove the existence of a contract. The judgment against the hospital must be vacated.

2. The evidence presented a question of fact for the jury to decide regarding whether the doctor was an employee of Northern Professional. The trial court properly denied the plaintiff's motions for a directed verdict or judgment notwithstanding the verdict regarding this issue.

3. The trial court properly denied the plaintiff's motions for a directed verdict and judgment notwithstanding the verdict regarding whether the doctor, who was found to be an agent of the hospital, was acting within the scope of her agency when she breached the plaintiff's right to confidentiality by contacting the academy. The evidence created a question for the jury to decide.

4. The plaintiff's claim that the trial court erred in rescinding the portion of the order awarding the plaintiff costs and attorneys fees against the doctor is rendered moot by the Court of Appeals decision.

5. The award of costs to the hospital was permissible.

. 6. As a matter of law, the doctor's disclosure about the plaintiff cannot be considered a cause in fact of the rescinding of the plaintiff's appointment to the academy. The doctor's conduct was not a proximate cause of the plaintiff's loss. There is no basis for a conclusion that a different outcome might have occurred had the plaintiff, not the doctor, reported the plaintiff's hospitalization.

7. Because the doctor is not liable to the plaintiff, the other defendants cannot be held liable to the plaintiff under a theory of vicarious liability.

8. In Docket No. 139088, the judgment in favor of Northern Professional must be affirmed and the judgment against the hospital must be vacated. In Docket No. 139253, the judgment against the doctor must be reversed.

Affirmed in part, reversed in part, and vacated in part.

JANSEN, J., concurring in part and dissenting in part, stated

that the hospital is entitled to judgment as a matter of law in Docket No. 139088 and that the plaintiff has failed to raise an issue that requires reversal, except with regard to the award of costs and attorney fees against the doctor. With regard to Docket No. 139253, however, it cannot be said that the doctor's conduct was not a proximate cause of the plaintiff's injury. The trial court's judgment in Docket No. 139088 should be reversed, the judgment against the hospital should be vacated, and the action should be remanded to the trial court to reinstate the order awarding the plaintiff attorney fees against the doctor. The trial court's judgment against Dr. Godsell-Stytz in Docket No. 139253 should be affirmed.

1. CONTRACTS — IMPLIED CONTRACTS — CONSIDERATION — PREEXISTING DUTIES.

An act performed pursuant to a preexisting duty cannot provide the consideration necessary for an implied contract.

2. AGENCY — ACTUAL AUTHORITY — APPARENT AUTHORITY.

The authority of an agent to bind a principal may be either actual or apparent; actual authority may be either express or implied, with implied authority being that authority the agent believes the agent possesses; apparent authority arises where acts and appearances lead a third person reasonably to believe that an agency relationship exists; apparent authority must be traceable to the principal and may not be established by the agent's acts and conduct alone.

3. TORTS — BREACH OF PROFESSIONAL CONFIDENCE — PROXIMATE CAUSE.

A breach of a professional confidence must be a proximate cause of the plaintiff's loss in order to be actionable; proof of two separate elements is required to show proximate cause: cause in fact and legal cause; an injury that would have occurred regardless of the breach cannot be said to have been proximately caused by the breach.

*Ready, Sullivan & Ready* (by *Thomas D. Ready* and *Dwight R. Robinson*), for Christopher M. Alar.

*Law Offices of Thomas J. Trenta, P.C.* (by *Thomas J. Trenta* and *Richard T. Counsman*), for Gayl Godsell-Stytz, D.O., and Northern Professional Emergency Physicians, P.C.

*Kitch, Saurbier, Drutchas, Wagner & Kenney,*

*P.C.* (by *Susan Healy Zitterman, William A. Tanoury,* and *David R. Nauts*) (*Lisa Diehl Vandecaveye,* of Counsel), for Mercy Memorial Hospital.

Before: CAVANAGH, P.J., and JANSEN and D. C. KOLENDA,* JJ.

CAVANAGH, P.J. In Docket No. 139088, defendant Mercy Memorial Hospital appeals as of right from a January 18, 1991, judgment in favor of plaintiff, a March 8, 1991, order denying its motion for judgment notwithstanding the verdict (JNOV), and a February 13, 1991, order assessing costs. Plaintiff Christopher Alar cross appeals as of right from the January 18, 1991, judgment in favor of defendant Northern Professional Emergency Physicians, P.C., and the February 13, 1991, order assessing costs. Plaintiff also cross appeals from the trial court's denial of his motions to amend the special verdict, for JNOV, and the grant of taxable costs to defendant Mercy Memorial Hospital. We vacate the judgment against Mercy Memorial Hospital and affirm the judgment in favor of Northern Professional Emergency Physicians.

In Docket No. 139253, defendant Gayl Godsell-Stytz, D.O., appeals as of right from the January 18, 1991, judgment against her and from the denial of her motion for JNOV. The appeals were consolidated. We reverse.

FACTS

This case arises from plaintiff's alleged attempted suicide and subsequent admission to the emergency room and psychiatric unit at Mercy Memorial Hospital on June 8, 1988. Plaintiff, who had been appointed to the United States Air Force

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Academy in March 1988, was a senior high school student at Catholic Central High School at the time of the incident. Plaintiff had been involved in an exclusive relationship with Jill Bodine. During the spring of 1988, plaintiff talked to Jill about harming himself. Plaintiff claimed that he would mention suicide to get Jill's attention or divert it from any problem they may have been having at the moment. Jill testified, however, that she believed plaintiff had been unhappy for a few months and believed he was serious about harming himself.

On June 8, 1988, Jill informed plaintiff that she wanted to date other men in the fall because they were going away to separate universities. Plaintiff objected to this. After Jill left, plaintiff wrote a note suggesting that harm might befall him and he retrieved a gun from his parents' room to make sure that Jill would take him seriously.

Plaintiff then went to the school and gave Jill the note while she was in a student meeting. Jill found plaintiff in a car in the parking lot and plaintiff had the gun in his hand. Plaintiff told Jill that if he could not stay with her, his life was not worth living. Jill attempted to get the gun, but plaintiff was able to keep it away from her. Jill then went back into the school and the principal approached the car and asked plaintiff to help him load some boxes. While plaintiff was in the hallway of the school, the police arrived and plaintiff was taken to Mercy Memorial Hospital.

While in the emergency room, Dr. Godsell-Stytz saw plaintiff, treated him, and they spoke about the Air Force Academy. Dr. Godsell-Stytz was familiar with the Air Force Academy because her husband was a graduate. Eventually, plaintiff was taken to Pineview Center, the psychiatric unit at Mercy Memorial Hospital.

Plaintiff voluntarily admitted himself into Pineview under the care of Dr. Gary Koloff, a psychiatrist. Dr. Godsell-Stytz consulted with Dr. Koloff shortly after plaintiff was admitted. Dr. Godsell-Stytz told Dr. Koloff that she felt the Air Force Academy needed to be informed of plaintiff's situation, but she did not tell Dr. Koloff that she intended to call the academy herself. Further, when she spoke with plaintiff in the emergency room, she did not ask for plaintiff's permission to notify the Air Force Academy and she did not tell plaintiff that she intended to notify the academy.

Dr. Godsell-Stytz called the Air Force Academy and notified Lieutenant Colonel John F. Swiney, Jr., the director of cadet selections at the academy, of plaintiff's admission to the hospital. Lt. Col. Swiney contacted the Department of Defense Medical Examination Review Board and advised them of plaintiff's situation. After a review of plaintiff's medical records, his admission to the Air Force Academy was revoked on June 27, 1988.

Plaintiff filed an action in the Monroe Circuit Court contending that Dr. Godsell-Stytz breached the physician-patient privilege, resulting in the loss of his appointment to the Air Force Academy, and that Dr. Godsell-Stytz' actions constituted intentional interference with a business relationship. Derivative claims of vicarious liability were brought against Northern Professional Emergency Physicians, a company providing emergency room physicians to hospitals by contract, and Mercy Memorial Hospital. Plaintiff also claimed that Dr. Godsell-Stytz' conduct breached a contract entered into between him and Mercy Memorial Hospital for which the hospital was liable independent of the vicarious liability claims.

Following a lengthy jury trial, the jury found

that Dr. Godsell-Stytz was liable for breach of the physician-patient privilege and tortious interference with a business relationship, that Mercy Memorial Hospital was not vicariously liable for Dr. Godsell-Stytz' tortious conduct, but that the hospital breached its contract with plaintiff, and that Northern Professional Emergency Physicians was not vicariously liable because Dr. Godsell-Stytz was not its employee. The jury awarded plaintiff $95,000 in damages. Following postjudgment proceedings regarding motions for JNOV and costs and attorney fees, these appeals ensued.

## DISCUSSION

### DOCKET NO. 139088

Defendant Mercy Memorial Hospital raises nine issues in its brief; however, we find one issue to be dispositive and we vacate the judgment against Mercy Memorial. We agree with Mercy Memorial that the trial court erred in denying its motions for a directed verdict and JNOV because plaintiff failed to prove the existence of a contract.

I

In reviewing a motion for a directed verdict, this Court views the testimony and legitimate inferences drawn therefrom in a light most favorable to the nonmoving party. Directed verdicts are appropriate only when no factual question exists upon which reasonable minds could differ. *Brisboy v Fibreboard Corp,* 429 Mich 540, 549; 418 NW2d 650 (1988). Similarly, if the evidence is such that reasonable minds could differ, then judgment notwithstanding the verdict is also improper. *Davis v Wayne Co Sheriff,* 201 Mich App 572, 579; 507 NW2d 751 (1993).

Plaintiff's claim against Mercy Memorial was premised on an alleged breach of contract. Upon his admission to Pineview, plaintiff was given a "Rights and Privileges" form that summarized his rights under the Mental Health Code. Plaintiff claims that this document is a contract entered into by himself and Mercy Memorial that Mercy Memorial breached when Dr. Godsell-Stytz called the Air Force Academy concerning plaintiff's admission to the hospital.

Mercy Memorial was required by MCL 333.20201; MSA 14.15(20201) to adopt a policy describing the rights and responsibilities of patients and to treat patients in accordance with that policy. Included in this policy is the patient's right to confidential treatment of personal and medical records. MCL 333.20201(2)(c); MSA 14.15(20201)(2)(c). Additionally, Mercy Memorial was required by statute to keep confidential information acquired in the course of providing plaintiff with mental health services. MCL 330.1748; MSA 14.800(748). Therefore, the requirement that such duties be imparted to plaintiff was a preexisting duty under the statute. Because Mercy Memorial had a preexisting statutory duty to afford plaintiff these rights of confidentiality when plaintiff sought the services of the hospital and became a patient, this duty could not provide adequate consideration for any alleged contractual relationship. Mercy Memorial's preexisting duty imposed by statute cannot be considered adequate consideration to create a contract. *Powers v Peoples Community Hosp Authority,* 183 Mich App 550, 554; 455 NW2d 371 (1990); *Penner v Seaway Hosp,* 169 Mich App 502, 510-511; 427 NW2d 584 (1988).

Thus, the trial court erred in denying Mercy Memorial's motions for a directed verdict and JNOV. Other than the rights and privileges docu-

ment, plaintiff presented no evidence regarding the question of consideration supporting an alleged contract. Failing to prove one of the essential elements of a contract, plaintiff could not sustain his claim of breach of contract. We therefore vacate the judgment against defendant Mercy Memorial Hospital.

II

In his cross appeal, plaintiff raises four issues. He first argues that the trial court erred in denying his motion for a directed verdict concerning whether Dr. Godsell-Stytz was an employee of Northern Professional Emergency Physicians. The jury specifically found that there was no employee-employer relationship between Dr. Godsell-Stytz and Northern Professional. We find that because the evidence presented a factual question with regard to this issue, the trial court did not err in denying plaintiff's motion for a directed verdict and all postjudgment motions related to this issue.

Contrary to plaintiff's assertion, the record does not establish that, as a matter of law, an employee-employer relationship existed between Dr. Godsell-Stytz and Northern Professional. The contract at issue presents conflicting evidence regarding Dr. Godsell-Stytz' status. The contract, under the heading "Status of Physician," stated that the physician was an independent contractor for the furnishing of emergency services. However, the contract also provided that Northern Professional would perform all scheduling, including absences, and prohibited absences during certain holiday periods. Northern Professional also had sole discretion to determine whether a complaint by a hospital against a doctor was serious and meritorious enough to warrant immediate termination, and could suspend or terminate the contract under a

variety of circumstances. Further, Northern Professional paid the doctors an hourly wage for services and acquired an assignment of all fees and charges for the doctors' services.

Also, in the agreement entered into by Northern Professional and Mercy Memorial, Northern Professional was defined as a "Michigan professional Corporation employing physicians qualified to provide emergency medicine services." An emergency physician was defined as a "subcontractor or employee of the Corporation." This agreement also provided that Northern Professional is an independent contractor and personnel employed or contracted by Northern Professional were not entitled to benefits provided to hospital employees. Finally, the agreement stated that all personnel provided by Northern Professional are employees or independent contractors of Northern Professional, and Northern Professional was required to pay all compensation and fringe benefits, withhold applicable taxes, pay unemployment compensation fund payments, and maintain worker's compensation fund insurance.

Therefore, viewed in a light most favorable to Northern Professional, the evidence presented a question of fact whether Dr. Godsell-Stytz was an employee of Northern Professional over whom Northern Professional retained the right of control, or whether she was an independent contractor over whom Northern Professional had no control. *Jenkins v Raleigh Trucking Services, Inc,* 187 Mich App 424, 429; 468 NW2d 64 (1991). The trial court did not err in denying plaintiff's motion for a directed verdict or JNOV regarding this issue.

III

Plaintiff next claims that the trial court erred in

denying his motions for a directed verdict and
JNOV regarding whether Dr. Godsell-Stytz, who
was found to be an agent of Mercy Memorial, was
acting within the scope of her agency when she
breached plaintiff's right to confidentiality by con-
tacting the Air Force Academy. We again find that
there was a factual issue for the jury to determine
and that the trial court properly denied the mo-
tions for a directed verdict and JNOV.

Plaintiff contends that, as a matter of law, Dr.
Godsell-Stytz was acting within the scope of the
actual or apparent authority of her agency when
she contacted the Air Force Academy concerning
plaintiff's admission to the hospital. The authority
of an agent to bind a principal may be either
actual or apparent. *Meretta v Peach,* 195 Mich
App 695, 698; 491 NW2d 278 (1992). Actual au-
thority may be either express or implied. Implied
authority is the authority that an agent believes
the agent possesses. *Id.* Apparent authority arises
where the acts and appearances lead a third per-
son reasonably to believe that an agency relation-
ship exists. However, apparent authority must be
traceable to the principal and cannot be estab-
lished only by the acts and conduct of the agent.
*Id.,* pp 698-699.

Plaintiff relates the testimony indicating that
Dr. Godsell-Stytz called the Air Force Academy
from Mercy Memorial, left her name and the
hospital's telephone number for the return call,
and advised Lt. Col. Swiney that she was a physi-
cian at Mercy Memorial. These facts, however, do
not prove as a matter of law that Dr. Godsell-Stytz
was acting within the scope of any actual or
apparent authority. In fact, plaintiff has pointed to
no evidence that Mercy Memorial conferred any
actual authority on Dr. Godsell-Stytz to inform the
Air Force Academy of plaintiff's admission to the

hospital, nor do the facts and circumstances indicate that she had the apparent authority to do this.

Accordingly, viewed in a light most favorable to Mercy Memorial, the evidence, at best, created a jury question regarding whether Dr. Godsell-Stytz was acting within the scope of her authority as an agent of the hospital when she contacted the Air Force Academy. The trial court properly denied plaintiff's motions for a directed verdict and JNOV regarding this issue.

IV

Plaintiff next claims that the trial court erred in rescinding that portion of the February 13, 1991, order awarding plaintiff costs and attorney fees against Dr. Godsell-Stytz. Our disposition of this case and of Docket No. 139253, below, renders this issue moot.

V

Plaintiff last contends that Mercy Memorial is precluded from taxing costs pursuant to MCR 2.625 because this lawsuit involved only a single cause of action and plaintiff prevailed on that cause of action against Mercy Memorial. In light of our resolution of the contract issue raised by Mercy Memorial and finding that plaintiff failed to establish the existence of a contract, we find that the award of costs pursuant to MCR 2.625(B)(3) was permissible.

DOCKET NO. 139253

In this appeal, Dr. Godsell-Stytz raises several issues, of which we find the issue regarding proximate cause to be dispositive.

I

As with all purportedly tortious conduct, a breach of a professional confidence must, in order to be actionable, be a proximate cause of the plaintiff's loss. *Gebhardt v O'Rourke*, 444 Mich 535, 544; 510 NW2d 900 (1994). That requires proof of two separate elements: (1) cause in fact, and (2) legal cause. *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). We are reversing in this case because Dr. Godsell-Stytz' disclosure about plaintiff cannot, as a matter of law, be considered a cause in fact of the rescinding of plaintiff's appointment to the Air Force Academy.

It was undisputed at trial that "applicants to the Academy are required to disclose any new illness or injury since completing the final qualifying medical examination and failure to so comply may cause the applicant to be refused admission." Therefore, we must assume that plaintiff would have reported his 1988 hospitalization at Mercy Memorial Hospital. The integrity of the legal process demands that the courts assume that persons with such an obligation will honor it. It would corrode the integrity and effectiveness of the legal system to do otherwise. Cf. *Pantely v Garris, Garris & Garris, PC*, 180 Mich App 768; 447 NW2d 864 (1989). It was also undisputed at trial that plaintiff's appointment was rescinded because, as the result of defendant doctor's report, his medical records were reviewed and a decision was made, on the basis of that review, to take action. That review was performed according to Department of Defense policy by an established board that regularly conducts such reviews.

Three conclusions inevitably follow: (1) it was not defendant doctor's disclosures that resulted in

the rescinding of plaintiff's appointment; that happened as a result of a review of medical records occasioned by the disclosures, a very significant distinction; (2) the very same review would have occurred had plaintiff reported, as he was required to do, his hospitalization; the same board and policy would have been involved; and (3) because the very same review would have occurred, the only principled conclusion to draw is that plaintiff would have lost his appointment. Accordingly, the proofs at trial provide no basis whatsoever to conclude that "but for" defendant doctor's disclosures, plaintiff's "injury" would not have occurred. The contrary conclusion is what was indisputably established by the evidence at trial: when plaintiff did whatever he did on June 8, 1988, he lost his appointment to the Air Force Academy by virtue of that conduct. What defendant doctor did made no difference, meaning that her conduct was not a proximate cause of plaintiff's loss. *Glesner v Jones*, 368 Mich 510, 512; 118 NW2d 378 (1962). Injuries that would have occurred anyway cannot be said to have been proximately caused. *Nielsen v Henry H Stevens, Inc*, 368 Mich 216, 220; 118 NW2d 397 (1962).

With all due respect to our dissenting colleague, we must say that it is patently incorrect to conclude, as she does, that plaintiff's appointment might not have been revoked had he, not defendant doctor, reported his hospitalization because he might have been able to present it "in a different light." The trial record does not allow that conclusion. What resulted in the rescinding of plaintiff's appointment was not defendant doctor's report to the Air Force Academy, but the review of plaintiff's medical records prompted by that report. Had plaintiff reported the hospitalization, as he had to, exactly the same review would have

occurred because the same records would have been studied by the same board for the same reason. In other words, no matter how he reported his hospitalization, even if there was a way to report it differently than had defendant doctor, the outcome would have been the same because plaintiff lacked any ability whatsoever to alter the records of that hospitalization. Therefore, it is not speculative to conclude that the outcome would have been the same had plaintiff reported his hospitalization. There is no basis for a conclusion that a different outcome might have occurred had plaintiff, not defendant doctor, reported that hospitalization.

## II

In *Azzar v Primebank, FSB,* 198 Mich App 512; 499 NW2d 793 (1993), this Court, on the basis of several decisions by the Supreme Court of the United States, held that enforcement of the First Amendment guarantee of the right to petition the government can require conferring absolute immunity from liability on any person who presents information to the government upon which the government acts, even if that information would, if disclosed under other circumstances, give rise to tort liability. Defendant doctor contends, alternatively, that she is entitled to such immunity. We are not deciding that contention, however, because we need not decide it in light of our decision regarding proximate cause. We leave the fleshing out of *Azzar* to a case where the need to do that will provide the appropriate focus.

## III

It necessarily follows that the other defendants

in this case cannot possibly be held liable to plaintiff for a reason in addition to those ably discussed by Judge JANSEN in her opinion concurring in part. Their liability, if any, is exclusively vicarious. Because defendant doctor cannot, for the reasons discussed above, be held liable to plaintiff, neither other defendant can be held liable, there being nothing from which to derive liability.

### DISPOSITION

In Docket No. 139088, the judgment in favor of Northern Professional Emergency Physicians is affirmed and the judgment against Mercy Memorial Hospital is vacated. In Docket No. 139253, the judgment against Dr. Godsell-Stytz is reversed. The issue of mediation sanctions in Docket No. 139088 is moot. We retain no further jurisdiction.

D. C. KOLENDA, J., concurred.

JANSEN, J. *(concurring in part and dissenting in part)*. I concur in Docket No. 139088 that defendant Mercy Memorial Hospital is entitled to judgment as a matter of law for the reasons set forth in the majority opinion. I also concur that plaintiff, as the cross appellant in Docket No. 139088, has failed to raise an issue that requires reversal, except with regard to the award of costs and attorney fees. I must respectfully dissent, however, in Docket No. 139253, because I cannot agree that Dr. Godsell-Stytz' conduct was not a proximate cause of plaintiff's injury.

In her appeal, Dr. Godsell-Stytz raises a total of nine issues. I do not find any of these issues to require reversal.

Dr. Godsell-Stytz first argues that the trial court erred in failing to identify properly plaintiff's

claim against her as one alleging malpractice or negligence. She specifically claims that there is no cause of action for breach of the physician-patient privilege.

In *Saur v Probes,* 190 Mich App 636; 476 NW2d 496 (1991), this Court held that a cause of action exists for a psychiatrist's unauthorized disclosure of privileged communications. MCL 600.2157; MSA 27A.2157 prohibits a physician from disclosing information acquired when attending a patient in a professional character if the information was necessary to enable the physician to prescribe for the patient as a physician. The statute does not create civil liability for an unauthorized disclosure. However, the purpose of the statute is to protect the confidential nature of the physician-patient relationship and to encourage free discourse between physicians and their patients. *Swickard v Wayne Co Medical Examiner,* 438 Mich 536, 560; 475 NW2d 304 (1991). As this Court explained in *Saur, supra,* p 639, the statute exhibits this state's policy of protecting physician-patient confidences absent a superseding public or private interest. Therefore, a cause of action exists for a physician's unauthorized disclosure of privileged communications.

Such a cause of action is more akin to an action for a breach of a fiduciary duty or breach of confidentiality rather than an action for negligence or breach of the standard of care. In the absence of any authorization provided by law for the disclosure of the privileged communication, a waiver of the privilege by the patient, or if the disclosure is justified by the supervening interests of society, a third party, or the patient, the breach of the privilege by a physician is rather straightforward. Because an action based on a breach of the physician-patient privilege does not involve the

type of complex medical terms that are involved in a medical malpractice case, there is no need for expert testimony to establish the standard of care and breach thereof. Accordingly, I see no need for plaintiff to have presented expert testimony, as argued by Dr. Godsell-Stytz, where a jury could easily understand the breach of the physician-patient privilege.

The trial court did not err in denying defendant's motion for judgment notwithstanding the verdict (JNOV) on this ground. Further, because the trial court properly identified the cause of action, it did not err in denying defendant's requested jury instructions regarding medical malpractice, duty of care, comparative negligence, and more than one proximate cause because those requested instructions were not applicable in this case. MCR 2.516(D)(2).

Dr. Godsell-Stytz next argues that the trial court erred in denying her motion for a directed verdict because plaintiff failed to raise a factual question regarding the issue of proximate cause. Specifically, she argues that plaintiff failed to show sufficient evidence that her conduct was a proximate cause of the revocation of plaintiff's appointment to the Air Force Academy. I disagree with the majority's conclusion regarding this issue.

Proving proximate cause requires proof of two separate elements: (1) cause in fact, and (2) legal cause. Cause in fact usually requires a showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. Legal cause usually involves examining the foreseeability of consequences, and whether the defendant should be held legally responsible for those consequences. *Skinner v Square D Co,* 445 Mich 153, 162-163; 516 NW2d 475 (1994). A plaintiff must first establish cause in fact before legal cause becomes a relevant

issue. *Id.,* p 163. Usually, proximate cause is a factual issue for the jury to determine. *Schutte v Celotex Corp,* 196 Mich App 135, 138; 492 NW2d 773 (1992).

Viewing the testimony and legitimate inferences therefrom in a light most favorable to plaintiff, I find that there was a factual question on which reasonable minds could differ to justify submitting the issue to the jury. Regarding the cause in fact element, there is no dispute that Dr. Godsell-Stytz telephoned the Air Force Academy shortly after plaintiff's admission to Pineview and informed Lieutenant Colonel John F. Swiney, Jr., of plaintiff's hospitalization. Lt. Col. Swiney then contacted the Department of Defense Medical Examination Review Board (DODMERB) and plaintiff's medical records were reviewed. Ultimately, plaintiff's appointment was revoked. There was testimony from Colonel Larry Jecha, M.D., that a prior suicide attempt is a disqualifying defect for entry into the military and that the immaturity exhibited by plaintiff under stress was sufficient under the DODMERB's regulations to disqualify plaintiff. Lt. Col. Swiney testified that excellent health is required for admission, that psychological impairment such as psychosis, suicidal attempts, and emotional instability could disqualify an applicant, and that suicidal ideation would be a great concern if the DODMERB felt this could manifest itself again under the stress of the academy. Finally, applicants to the academy are required to disclose any new illness or injury since completion of the final qualifying medical examination and failure to so comply may cause the applicant to be refused admission.

However, in this case, there was no opportunity for plaintiff to notify the academy of his admission to Pineview because Dr. Godsell-Stytz called on the

day of plaintiff's admission to Pineview. Thus, there was a factual issue to be determined regarding whether Dr. Godsell-Stytz' telephone call to the academy caused plaintiff's appointment to be revoked or whether the appointment would have been revoked irrespective of whether she contacted the academy. Therefore, where it was speculative regarding whether plaintiff's appointment would have been revoked had he contacted the academy, and where plaintiff could have presented the admission in a different light, I believe the trial court did not err in denying the doctor's motion for a directed verdict regarding this issue. There was a factual question regarding whether, but for the doctor's actions, plaintiff's injury would not have occurred.

Further, I would find a strict violation of the physician-patient privilege by Dr. Godsell-Stytz and hold her liable for this conduct. Dr. Godsell-Stytz' conduct was a proximate cause of plaintiff's injury because she contacted the Air Force Academy regarding plaintiff's hospitalization. I cannot agree that the doctor's conduct made no difference. Dr. Godsell-Stytz violated the physician-patient privilege and her conduct led to a review of the medical records, which in turn led to the revocation of plaintiff's appointment. Therefore, there was a question of fact regarding whether Dr. Godsell-Stytz' conduct proximately caused plaintiff's injury. As our Supreme Court has noted, there may be more than one proximate cause for the same injury and a defendant cannot escape liability for its negligent conduct merely because the negligence of others may also have contributed to the harm. *Brisboy v Fibreboard Corp,* 429 Mich 540, 547; 418 NW2d 650 (1988).

Regarding the issue concerning legal cause, there was a factual issue whether it was foresee-

able that, by contacting the academy in violation
of the duty of confidentiality, there was a risk of
harm to plaintiff with regard to his status at the
academy. Dr. Godsell-Stytz testified that her hus-
band was a former Air Force Academy cadet and
an Air Force officer. She was aware that the
information she knew about plaintiff's condition
was important to the academy and she admitted
that her primary concern in notifying the academy
was to assist plaintiff's admission to the academy.
Such testimony could reasonably permit the jury
to find that it was foreseeable to Dr. Godsell-Stytz
that plaintiff might lose his appointment because
of her disclosure of confidential information to the
academy. Accordingly, the trial court did not err
in denying the doctor's motion for a directed ver-
dict regarding the issue of proximate cause where
there were factual issues for the jury to resolve.

Dr. Godsell-Stytz also argues that the trial court
abused its discretion in not allowing medical re-
cords from the Monroe County Community Mental
Health Clinic to be admitted. Error may not be
predicated on a ruling that excludes evidence un-
less a substantial right of the party was affected.
MRE 103(a)(1).

Plaintiff successfully precluded admission of the
medical records via a motion in limine based on
relevancy. The trial court agreed with plaintiff
that, because Dr. Godsell-Stytz was unaware of the
mental health clinic records at the time she noti-
fied the academy, the records were irrelevant. No
substantial right of the doctor was affected by the
refusal to admit the medical records because Dr.
Godsell-Stytz admitted that she was unaware of
the records when she contacted the academy. Fur-
ther, the Air Force Academy did not become
aware of plaintiff's prior treatment at the mental

health clinic until after the investigation started and plaintiff's appointment was put on hold.

Additionally, the records were used by Dr. Godsell-Stytz to impeach plaintiff's testimony at trial. Thus, the substance of the records were made known at trial. I find no error regarding this issue.

Dr. Godsell-Stytz also contends that the trial court erred in starting the trial in the absence of her lead attorney. Apparently, there was a bad snowstorm in the Detroit area on the date that the trial commenced and lead counsel for Dr. Godsell-Stytz was delayed. Cocounsel for Dr. Godsell-Stytz (who was from the same law firm as the lead counsel), indicated that he could stand in for the lead counsel and, therefore, Dr. Godsell-Stytz was represented by an attorney until lead counsel arrived. Dr. Godsell-Stytz has failed to demonstrate any prejudice resulting from the cocounsel's participating in the jury voir dire. I find no error on the part of the trial court in this regard.

Dr. Godsell-Stytz further argues that the trial court erred in allowing plaintiff to pursue causes of action based on the privilege statutes. As previously stated, although the physician-patient privilege statute does not create civil liability, this Court has recognized a cause of action for a psychiatrist's disclosure of privileged communications. *Saur, supra,* pp 637-638. Accordingly, the trial court did not err in allowing plaintiff to pursue a cause of action based on the breach of the physician-patient privilege.

Further, to the extent that defendant doctor also argues in regard to this issue that the trial court erred in allowing the hospital's rules and regulations to be introduced into evidence, that the privilege statutes should not have been the basis for jury instructions, and that she did not breach a privilege because plaintiff's identity is not pro-

tected by the physician-patient privilege, I find these issues to be unpreserved for appellate review because they are not within the scope of the statement of questions presented on appeal. MCR 7.212(C)(4); *Preston v Dep't of Treasury,* 190 Mich App 491, 498; 476 NW2d 455 (1991).

Dr. Godsell-Stytz also claims that the trial court abused its discretion in excluding the opinion testimony of Colonel Thomas C. Wilkinson, the director of admissions for the academy, concerning his interpretation of a cadet's reporting duties. As has been noted, the instructions to appointees booklet includes a paragraph that states that an applicant must report any illness or injury suffered after the final qualifying medical examination. The failure to comply with this requirement may cause the applicant to be refused admission.

MRE 701 provides that a lay witness may give opinion testimony if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Any opinion by Col. Wilkinson would not necessarily have been helpful to a clear understanding of his testimony or the determination of a fact in issue. Dr. Godsell-Stytz elicited testimony from Col. Jecha that the situation presented by plaintiff's actions would have required plaintiff to report under the provision. Therefore, the jury knew of plaintiff's reporting requirement. A substantial right of Dr. Godsell-Stytz was not affected by the trial court's ruling. MRE 103(a)(2).

Dr. Godsell-Stytz next argues that the trial court erred in denying her motion for JNOV regarding plaintiff's claim of tortious interference with a business relationship. Plaintiff presented sufficient evidence regarding each element to justify submitting the claim to the jury.

The elements of tortious interference with a business relationship are: (1) the existence of a valid business relation or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) damages to the party whose relationship or expectancy was disrupted. *Winiemko v Valenti,* 203 Mich App 411, 416; 513 NW2d 181 (1994).

First, plaintiff presented evidence that he had a reasonable and valid expectation of being admitted to the Air Force Academy. No one disputes that plaintiff had received an appointment to the academy in March 1988. Regarding the second element, it is clear that Dr. Godsell-Stytz knew of plaintiff's appointment to the academy after she spoke with him in the emergency room. Regarding the third element, there was evidence that Dr. Godsell-Stytz contacted the academy in violation of the physician-patient privilege and without plaintiff's authorization. Dr. Godsell-Stytz' action was in violation of state law and hospital regulations. Plaintiff presented evidence that Dr. Godsell-Stytz' contact with the academy resulted in his appointment being placed on deferred status, and ultimately his appointment was revoked following the DODMERB's investigation. Whether the same result would have occurred had plaintiff notified the academy himself is speculative and at least raises a factual issue for the jury to resolve. Last, plaintiff presented evidence of damages, being the loss of his appointment to the academy and the resulting educational and career damages. Therefore, the trial court did not err in denying Dr. Godsell-Stytz' motion for JNOV regarding the claim of tortious interference with a relationship.

Dr. Godsell-Stytz next argues that the trial court

erred in failing to disqualify a juror who allegedly misrepresented whether the juror had been a patient at Mercy Memorial.

During voir dire, the prospective jurors were asked whether they had been a patient at Mercy Memorial Hospital. Several jurors responded with differing answers. At the start of the fifth day of trial, defense counsel for Mercy Memorial advised the court that he had learned that one of the jurors either had been less than candid or misunderstood the question. Apparently, one of the jurors had been admitted to the psychiatric unit of the hospital. For confidentiality reasons, the name of the juror was not disclosed on the record. Defense counsel stated on the record that there had been a discussion in chambers and that the parties knew of this problem and had agreed not to automatically remove the juror. Defense counsel for Dr. Godsell-Stytz agreed that the juror would not be removed and that the juror would not be questioned.

Immediately after the jury verdict, counsel for Dr. Godsell-Stytz raised the issue of the juror in question. Counsel requested an interrogation of each juror and argued that if any jurors disclosed that they had not been truthful, then he would move for a mistrial. However, the trial court denied the request, noting that none of the parties desired to question or remove the juror when the issue was first brought to the court's attention.

On these facts, I believe Dr. Godsell-Stytz waived this issue for appellate review. She agreed not to question or remove the juror. She may not now claim error with regard to something that her own attorney deemed proper at trial. *People v McCurdy,* 185 Mich App 503, 507; 462 NW2d 775 (1990). To do otherwise would allow her to harbor error as an appellate parachute. *People v Shuler,*

188 Mich App 548, 552; 470 NW2d 492 (1991). She is not entitled to a new trial on this basis.

Last, both Mercy Memorial and Dr. Godsell-Stytz have argued that her communication to the Air Force Academy is protected by the First Amendment right to petition the government. This argument merits little consideration. While the First Amendment of the federal constitution protects the right of the people to petition the government for a redress of grievances, this right is clearly not applicable to the facts of this case. Dr. Godsell-Stytz was not contacting the Air Force Academy for a redress of grievances; rather, she stated that she called the Air Force Academy to help plaintiff have a better chance of entering into or staying in the academy. The trial court did not err in denying defendants' motions for a directed verdict and JNOV regarding this issue.

Finally, because I would conclude that the trial court did not err in denying defendant doctor's motion for a directed verdict or JNOV, I would agree with plaintiff that the trial court erred in rescinding that portion of the February 13, 1991, order awarding plaintiff costs and attorney fees against defendant doctor. The trial court's recision of its order awarding plaintiff attorney fees pursuant to MCR 2.405 was erroneous because Dr. Godsell-Stytz never requested that the order be modified, nor did she object to the entry of the order. Rather, only counsel for codefendant Northern Professional Emergency Physicians, P.C., argued that it was entitled to costs and attorney fees because Northern Professional was the prevailing party. Therefore, I would find that the trial court's original order awarding attorney fees and costs pursuant to MCR 2.405 to plaintiff against Dr. Godsell-Stytz was not an abuse of discretion. *Butzer v Camelot Hall Convalescent Centre, Inc (After*

*Remand),* 201 Mich App 275, 278; 505 NW2d 862 (1993).

Accordingly, I agree to reverse in Docket No. 139088 and vacate the judgment against Mercy Memorial Hospital. In the cross appeal, I would remand for the trial court to reinstate that portion of the February 13, 1991, order awarding plaintiff attorney fees against Dr. Godsell-Stytz. I would affirm in Docket No. 139253.