# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM BRANDON,

Plaintiff-Appellant,

v

DENISE L. HANDELSMAN, D.O.,

Defendant-Appellee.

UNPUBLISHED
February 23, 2016

No. 324712
Livingston Circuit Court
LC No. 13-027756-NO

Before: O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

In this case arising from allegations of unauthorized disclosure of sensitive medical information, plaintiff, William Brandon, appeals as of right from the circuit court's order granting summary disposition to defendant, Denise L. Handelsman, D.O., plaintiff's former psychiatrist. We reverse and remand this case to the trial court for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff sought treatment from defendant for several years for anxiety and depression, during the course of which defendant concluded that plaintiff suffered from borderline personality disorder (BPD), although she did not share that diagnosis with him. Plaintiff's wife at the time also engaged defendant's services, although only for purposes of managing her medications. Defendant referred both to a separate practitioner for marriage counseling. However, when plaintiff's wife asked defendant to recommend a book that might better help her understand plaintiff, defendant recommended one specifically dealing with persons suffering from BPD. Defendant testified at her deposition that she never advised the wife that she had diagnosed plaintiff with that condition, but plaintiff's now ex-wife testified that when she questioned defendant about the book recommendation, the latter confirmed that plaintiff suffered from it. Plaintiff himself first learned of the diagnosis from discussions with his wife, and defendant confirmed the diagnosis when plaintiff confronted her.

Asserting that defendant thus disclosed to a third party a diagnosis that should have remained confidential, plaintiff commenced this action, pleading ordinary negligence along with disclosure of privileged communications, disclosure of embarrassing facts, invasion of privacy, and intentional infliction of emotional distress. The trial court agreed with defendant that all of

-1-

plaintiff's claims in fact sounded in medical malpractice, and thus, were barred by the applicable statute of limitations.[1]

## II.  WHETHER PLAINTIFF'S CLAIMS SOUND IN MEDICAL MALPRACTICE

On appeal, plaintiff argues that the trial court erred in granting defendant summary disposition on the ground that all of his claims sounded exclusively in medical malpractice.  We review de novo as a question of law a trial court's decision on a motion for summary disposition.  *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999).  "[I]t is well established that the gravamen of an action is determined by reading the claim as a whole and looking beyond the procedural labels to determine the exact nature of the claim."  *Lucas v Awaad*, 299 Mich App 345, 360; 830 NW2d 141 (2013) (internal quotation marks, alteration, and citation omitted).  Plaintiff's claims all stem from his allegation that defendant violated the following statutory duty:  "Except as otherwise provided by law, a person duly authorized to practice medicine . . . shall not disclose any information that the person has acquired in attending a patient in a professional character, if the information was necessary to enable the person to prescribe for the patient . . . ."  MCL 600.2157.

Our Supreme Court has cautioned that "[t]he fact that an employee of a licensed health care facility was engaging in medical care at the time the alleged negligence occurred means that the plaintiff's claim may *possibly* sound in medical malpractice; it does not mean that the plaintiff's claim *certainly* sounds in medical malpractice."  *Bryant v Oakpointe Villa Nursing Ctr, Inc*, 471 Mich 411, 421; 684 NW2d 864 (2004).  The Court distinguished medical malpractice from ordinary negligence as follows:

> First, medical malpractice can occur only within the course of a professional relationship.  Second, claims of medical malpractice necessarily raise questions involving medical judgment.  Claims of ordinary negligence, by contrast, raise issues that are within the common knowledge and experience of the [fact-finder].  Therefore, a court must ask two fundamental questions in determining whether a claim sounds in ordinary negligence or medical malpractice:  (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.  If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions.  [*Id.* at 422 (bracketed interpolation retained; internal quotation marks and citations omitted).]

---

[1] See MCL 600.5805(6) (an action alleging malpractice must be commenced within two years after the claim has accrued); MCL 600.2912b(1) (a plaintiff alleging medical malpractice must provide the defendant notice of the intent to sue "not less than 182 days before the action is commenced"); MCL 600.5856(c) (the statute of limitations is tolled at the time notice is given "if during that period a claim would be barred by the statute of limitations or repose; but . . . not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.").

Although the Supreme Court did not attempt to differentiate medical malpractice from common-law intentional torts, that was presumably because only negligence (medical or otherwise) was at issue in in that case. See *id.* at 424.[2] The Court's two-step inquiry for distinguishing medical malpractice from other causes of action logically applies in connection with allegations of intentional misconduct as well.

A case in point is *Awaad*, 299 Mich App 345, where this Court treated a claim of intentional infliction of emotional distress as one of malpractice because it stemmed from the allegation that the defendant physician intentionally and knowingly communicated a false diagnosis of epilepsy to the plaintiff for the defendant's own financial gain resulting from unnecessary testing and treatment, and so expert testimony would be required to allow the jury to determine the veracity of that diagnosis. *Id.* at 354, 360-362. *Awaad* only shows that intentional misconduct on the part of a medical practitioner can properly be relegated to medical malpractice, not that such a claim must be so relegated.[3] The instant case is distinguishable because plaintiff does not take issue with the diagnosis of his BPD or how defendant handled his treatment for same, but rather, the fact that defendant revealed his diagnosis to a third party. Defendant admitted she *did not do so* in order to treat plaintiff. When asked to confirm that her referral of the book on BPD had nothing to do with *plaintiff's* treatment, she conceded, "No. It was regards to my patient," and specified that patient to be plaintiff's wife, not plaintiff. Defendant has offered no basis upon which to regard her conduct as an exercise of medical judgment on plaintiff's behalf, and no expert in psychiatry would be needed to assist the jury in determining the extent, or propriety, of any such revelation.[4] For these reasons, we conclude that none of plaintiff's theories of recovery implicate medical malpractice.

---

[2] That *Bryant* and certain other authorities seem to view medical malpractice solely as a subset of negligence, e.g., MCL 600.2912a(2); *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 533; 854 NW2d 152 (2014), reflects that the great majority of medical malpractice cases allege only medical negligence.

[3] We note that this Court in *Saur v Probes*, 190 Mich App 636; 476 NW2d 496 (1991) assumed, but did not decide, the propriety of treating a claim of disclosure of privileged communications as malpractice, but also that the Court in *Alar v Mercy Mem Hosp*, 208 Mich App 518; 529 NW2d 318 (1995), treated a claim of breach of physician-patient privilege as an actionable tort without acceding to the defendant-physician's request that it be recast as malpractice or negligence. See *id.* at 533-534 (JANSEN, J., concurring in part and dissenting in part).

[4] Contrary to the implication in the dissent, there is no different "scope of duty" when the same physician treats two different people who happen to be married. The record is very clear that defendant was not treating plaintiff and his wife jointly, such as for marriage therapy. They were separate patients of defendant, and the wife was treating with defendant strictly for purposes of her medication management. There is no exception in MCL 600.2157 that allows a physician to disclose medically privileged information to a spouse, another loved one, an employer, or anyone else for that matter, without the patient's express consent, regardless of the rationalization that might seem fitting. The words "shall not" are plain and unambiguous. As such, no expert is necessary to determine whether leaking privileged information constituted good judgment.

We further hold that if defendant did indeed openly disclose to plaintiff's wife that plaintiff suffered from BPD, that conduct may go beyond negligence and invite recovery in intentional tort, but that if there was no such plain disclosure, plaintiff's theory that defendant's recommendation of a book focusing on the condition from which he suffered itself constituted a disclosure of his confidential medical information sounds in negligence. Either way, the undisputed disclosure of sensitive medical information, in the face of ethical and statutory duties of confidentiality, is conduct within the realm of common knowledge and experience. No psychiatric expert would be required to help a jury understand that a disclosure took place, or, especially in light of defendant's admissions, whether the disclosure could reasonably be considered an exercise of medical judgment on plaintiff's behalf. As defendant herself conceded at her deposition, her referral of the book had nothing to do with her treatment of plaintiff.

Defendant alternatively offers argument challenging plaintiff's intentional tort theories on their merits. However, the trial court did not rule on those challenges, and so plaintiff had no occasion to consider if he should amend his pleadings to better fit his factual allegations into actionable theories of recovery. Thus, we do not weigh in on defendant's arguments at this time.

### III. WAIVER

Plaintiff, apparently anticipating that defendant would cite a purported written waiver of confidentiality rights as providing an alternative basis to affirm the result below, argues that the document in question had no such legal effect. Although the trial court did not reach that issue, because it is apt to arise on remand, it presents a question of law, and all the facts necessary for its resolution have been presented, we will reach and resolve it. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

"Waiver is the intentional relinquishment or abandonment of a known right." *In re Contempt of Dorsey*, 306 Mich App 571, 590; 858 NW2d 84 (2014) (internal quotation marks and citation omitted). To determine if a party has waived a legal right, "a court must determine if a reasonable person would have understood that he or she was waiving the interest in question." *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011). An implied waiver may be established by "a party's decisive, unequivocal conduct reasonably inferring the intent to waive," including by "so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive." *Id.* at 177 (internal quotation marks and citations omitted).

In response to plaintiff's raising of this issue, defendant contends that plaintiff waived confidentiality in connection with his wife by listing her on a waiver form and otherwise signaling that he approved of defendant's sharing of his medical information with her.

The form at issue was partially completed in April 2009 and then amended in April 2011. Plaintiff's signature appears, along with the date "4/23/09," for purposes of authorizing assignment of benefits to be paid. At the bottom, where the form asks, "If you are unavailable, and you want us to speak with another individual about your care, please list their name and phone numbers," the name of plaintiff's then wife is written in, with the date "4/23/2009." Where the form calls for a signature to confirm the choice of person authorized to receive confidential information, no signature is present. Instead that space has the notation, "no information to the above individual," with the date "4/28/2011."

-4-

On deposition, defendant agreed that to be valid the form had to be signed, and confirmed that plaintiff did not sign the one in question. Defendant additionally testified that she never had problems keeping in touch with plaintiff concerning his appointments, and thus, she did not remember ever regarding plaintiff as "unavailable" such that she needed to contact another person in that regard. As noted above, defendant confirmed that her referral of the book on BPD had nothing to do with *plaintiff's* treatment.

Because the waiver form calls for the waiving party's signature, and there is no dispute that plaintiff provided none, the waiver was invalid for that reason alone. Alternatively, were there any indication that plaintiff intended to agree to its terms despite his not having signed the form, because the form introduces the possibility of sharing the patient's information as intended to "assist us in communicating with you about your care," and asks the patient to specify a person "[i]f you are unavailable, and you want us to speak with another individual about your care," and because there is no indication that plaintiff was ever unavailable for that purpose, or that any communications to plaintiff's wife about plaintiff's BPD were in furtherance of plaintiff's care, the circumstances triggering the waiver of confidentiality did not come about. In short, because the waiver part of the form was not properly executed, and even if it were it did not authorize the disclosure here at issue, that waiver form does not offer an alternative basis for affirming the result below.[5]

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Jane M. Beckering

---

[5] Because these reasons alone well establish that the waiver form was and remains of no use to defendant, we need not consider plaintiff's additional argument that the form at issue was deficient for failure to meet the requirements of the federal Health Insurance Portability and Accountability Act, 42 USC 1320d *et seq.* (HIPAA), and thus whether any such deficiency invalidates for any purpose an otherwise properly executed waiver. See *Thomas v 1156729 Ontario Inc*, 979 F Supp 2d 780, 782-783 (ED Mich, 2013) (holding that state law concerning disclosure of medical information is preempted by the HIPAA where the latter's requirements are the more stringent).